**People of the State of Illinois, Plaintiff-Appellee, v. Earl Vaughn and Freddie Hatchett, Defendants-Appellants.**

Gen. Nos. 52,224, 52,225. (Consolidated.)

First District, Fourth Division.

April 2, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (George L. Lincoln and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Theodore A. Shapero, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED

Burglary. Ill Rev Stats (1965), c 38, § 19–1.

JUDGMENT

After a bench trial, both defendants were found guilty and placed on probation for five years, with Vaughn to serve the first year and Hatchett the first six months in the County Jail. Two other defendants, Rip Johnson and Davis Johnson, were found not guilty, and the State nolled the indictment as to a fifth defendant, Reverend Steven Taylor.

POINTS RAISED ON APPEAL

(1) The trial judge made inconsistent findings.

(2) Defendants were denied the right to fully cross-examine their accusers.

EVIDENCE

Police Officer Stanley Jasper, for the State

On July 15, 1966, he was working with Officers Houlihan and Williams. About 6:00 p. m., when it was still light, he drove by the Temkin Shoe Store at 1437 S. Pulaski Road in Chicago, and saw many people in the street looking into the store. There were approximately 50 or 100 people in the store. He and Officer Houlihan got out of the car to investigate and saw people trying on shoes. He went down the gangway at the side of the store to try to halt those who were leaving by the side door. He couldn't stop everyone. Officer Houlihan stood at the front door on Pulaski Road trying to stop people from going out. Someone had yelled "Police."

He entered the store through the side door carrying a shotgun and noticed that the door was jammed open, with the locks broken off. The front door was closed, but the two large front windows had been knocked out. They arrested thirteen people in the store, put them against the wall with their hands up, and searched them. Four persons that he arrested in the store were in court. To his knowledge, none of those four were brought into the store from outside. Among the people arrested were Vaughn, Hatchett, Davis Johnson, Rip Johnson, and

Reverend Steven Taylor. He personally handcuffed Rip Johnson and Davis Johnson. Those arrested were then transported by a squadrol to the police station. There were shoes scattered throughout the store, but they did not stay to gather them up because they were under orders to arrest everyone who was "in the vicinity, in the store." At about 6:30, they departed from the premises, leaving other police officers behind.

Louis Temkin, for the State

He is manager and salesman for Temkin Shoes, Inc. When he left the store on Thursday, July 14, 1966, the doors and gate were locked. The store was not open for business on Friday, July 15, 1966. He returned to the store on Friday to find the side door broken in and the store slightly disordered. The doors were resecured. When he returned on Saturday morning, the store was a shambles. He knew Hatchett lived behind the store, but he did not give him, or any other of the defendants, permission to enter the store on July 15.

Police Officer Melvin Houlihan, for the State

About 6:00 p. m. on July 15, 1966, he was working with Officers Jasper and Williams near the Temkin Shoe Store. There was a large crowd in front of the store. When they investigated, they found 50 or 60 people in the store with shoes and boxes in their hands. He entered through the front, and Officer Jasper entered through the rear. The people in the store dropped the objects and began to flee. He and Officer Jasper grabbed as many people as they could and placed them under arrest. Thirteen people were arrested, four of whom were in court. (He identified a fifth person who was a spectator in the courtroom, but, on closer scrutiny, withdrew the identification.) Those four he grabbed coming out of a rear storage room. Officer Williams called a squadrol, and they placed the arrested persons in it. He did not arrest anyone in the street and knew of no one arrested there.

119

Police Officer Arthur Jackson, for the State

Shortly after 6:00, on July 15, 1966, he arrived at the Temkin Shoe Store, where he found Officer Houlihan inside the front door and Officer Jasper by the side door. There were about 75 to 80 people inside the store, many of whom were were running out, and about 200 people in the street. His partner, Officer Johnson, arrested Reverend Taylor in the street for "creating a scene" and "starting a riot." He arrested the two Johnson boys outside of the store for being disorderly in the street. He thought there were two adults in the store at that time, and he identified them as Vaughn and Hatchett. He helped put Vaughn, Hatchett, Rip Johnson, and Davis Johnson into the squadrol.

Reverend Steven Taylor, for the defense

On July 15, 1966, he was arrested by Officer Johnson while standing with a group of people across the street from the shoe store. He was watching the activity around the store. As he was placed in the squadrol, he saw Rip and Davis Johnson standing on the sidewalk. There were about fifteen people in the squadrol, five of whom were adults.

Reverend Robert Christian was a character witness for defendant Vaughn.

Guido Marchetti and Leon Wool were character witnesses for Rip and Davis Johnson.

Earl Vaughn, on his own behalf

He is married and has two children, eight and nine years old. At the time of arrest, he was employed at Bugle Finishing Co. He was convicted for criminal trespass in 1958.

On July 15, 1966, his family was visiting his mother-in-law at 1422 South Harding. He went to find his son, because he heard the rioting, and he was going to take the family shopping. On Pulaski, he saw a crowd in front of the shoe store, and investigated it. He thought his son might be there. He couldn't see the child in front, so he

120

walked down the gangway to check the rear. He saw children running in and out of the store. Officer Jasper fired a shotgun into the air behind him, and he turned around to see what happened. Officer Jasper then butted him in the stomach with the gun and took him inside where he was lined up with others and searched. Defendant Hatchett was then brought in from outside. About 16 of them were then placed in the squadrol. He saw the Johnson brothers and Reverend Taylor for the first time when he was placed in the squadrol. He did not enter the Temkin Shoe Store to commit a felony.

Freddie Hatchett, on his own behalf

He lives with his mother directly behind the Temkin Shoe Store. On July 15, 1966, he had just left his house to go swimming and was walking through the gangway towards the Franklin Swimming Pool when he was arrested. He was taken into the store, where he was searched. Vaughn was the only adult he saw in the store. He was then placed in the squadrol with the other defendants. He knew the store was being burglarized, but he did not enter the store with the intention of committing a felony.

Davis Johnson, on his own behalf

He lives at 1424 S. Ridgeway and is a senior at Farragut High School. On July 15, 1966, he was walking along Pulaski after leaving a friend's house, when he saw a crowd in front of the shoe store. Kids were running in and out, and he stopped to look. Officers Jackson and Johnson then arrested him because he shouldn't have been there, and took him to the squadrol. He never entered the Temkin Shoe Store.

Rip Van Johnson, on his own behalf

He lives at 1424 S. Ridgeway and is a senior at Farragut High School. On July 15, 1966, he was walking to a restaurant at 15th Street and Pulaski when Officer Jackson stopped him and told him to stand by the squad

car. He was handcuffed and taken into the store. He was then put into the squadrol.

OPINION

(1) Defendants claim that the trial court erred in convicting defendants Hatchett and Vaughn when, on identical evidence, defendants Rip and Davis Johnson were acquitted. The testimony of Officers Jasper and Houlihan indicates that all four defendants were arrested in the store. The State's evidence against the four defendants was not identical. Both Rip and Davis Johnson had the corroborating testimony of Officer Jackson and Reverend Taylor to support their contention that they were arrested in the street for disorderly conduct, whereas Jackson testified that at that time he saw Vaughn and Hatchett inside the store. Neither Jackson nor Taylor could testify as to the circumstances of the arrests of Vaughn and Hatchett.

Defendants Vaughn and Hatchett also argue that, since the court obviously believed Jackson in regard to the Johnsons, all of the testimony of Officers Jasper and Houlihan must be discounted and held insufficient to support their conviction. Officer Jackson, however, stated that the Johnson brothers were arrested by him in the street for disorderly conduct. He did not know how Vaughn and Hatchett were arrested, but he did see them being held in the store. Officer Jackson thus contradicted part of the testimony of Officers Jasper and Houlihan, and apparently this discrepancy in the facts was sufficient in the mind of the trial judge to result in the acquittal of the Johnson brothers.

██ ██ This contention turns on the credibility of the witnesses—a matter essentially for the trial court. We still have the duty, however, to examine closely the evidence on which the decision is made, and if it is so unsatisfactory and unreasonable as to raise a serious doubt of the defendant's guilt, the conviction must be reversed. We do not feel that the discrepancies in the testimony

of the State's witnesses and the denials and contradictory testimony of defendants are sufficient to destroy the credibility of the State's entire case. We believe that there is enough evidence, if believed, to establish the guilt of defendants beyond a reasonable doubt. People v. Marino, 95 Ill App2d 391, 238 NE2d 256; People v. McElroy, 63 Ill App2d 403, 211 NE2d 444; People v. Clay, 27 Ill2d 27, 187 NE2d 719; People v. Gray, 33 Ill2d 349, 211 NE2d 369.

■ For the proposition that it is improper to convict one defendant under an indictment and acquit another under the same indictment when both are identified by the same witness, defendants cite People v. Griffin, 88 Ill App2d 28, 232 NE2d 216. In that case, the complaining witness testified that both defendants struck him and robbed him while they were riding together in an elevator. On that record, the trial court had found one defendant guilty and discharged the other. In reversing the guilty judgment, this court found that there was "no plausible reconstruction of the State's case which would support the finding of not guilty as to [one] and guilty as to [the other]." 88 Ill App2d 28, 31, 232 NE2d 216. As we have pointed out, this identity of total testimony does not exist in the case before us. There are, of course, many cases in which conviction of one of two jointly indicted and jointly tried defendants has been upheld. E. g., People v. Rogers, 16 Ill2d 175, 183, 157 NE2d 28.

(2) Defendants also contend that the trial judge improperly restricted the cross-examination of Officers Jasper and Houlihan. In the course of the State's case, defense counsel, on cross-examination, made several attempts to elicit testimony from the arresting officers as to the location of Reverend Taylor at the time of his arrest. Reverend Taylor's case had been nolled, presumably because the arresting officer admitted that his arrest was for disorderly conduct in the street. Defense counsel hoped to impeach the entire testimony of the

123

police officers on the basis of their statements concerning the arrest of Reverend Taylor. Objection was made to this testimony, and the court, in all instances, sustained the objection on the basis that Reverend Taylor was no longer a defendant and discussion of his arrest was irrelevant even for impeachment purposes. We do not believe that these rulings by the trial judge constitute reversible error.

 We agree that the greatest latitude should be given on cross-examination to the counsel for the defense for the purpose of impeaching adverse witnesses. People v. DuLong, 33 Ill2d 140, 210 NE2d 513. However, the latitude to be allowed in such cross-examination rests largely in the discretion of the trial court. Due to the trial judge's unique position, a conviction will not be reversed for improper restriction of cross-examination unless there has been a clear abuse of this discretion. People v. Provo, 409 Ill 63, 97 NE2d 802; People v. McCain, 29 Ill2d 132, 193 NE2d 784; People v. DuLong, 33 Ill2d 140, 210 NE2d 513; People v. Caldwell, 62 Ill App2d 279, 210 NE2d 556. The impeachment here was an attempt to show inconsistent statements concerning a collateral act. The location and circumstances of arrest of Reverend Taylor were irrelevant in the exploration of the guilt of the four defendants on trial. The facts of his arrest were different and were not before the court at that time. We find no abuse of the trial judge's discretion in limiting the scope of this cross-examination as he did. Defendants Vaughn and Hatchett were not prejudiced by such rulings.

DECISION

The judgments of the Circuit Court are affirmed.

Affirmed.

DRUCKER, P. J. and McNAMARA, J., concur.