THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *v.* LEE PATTERSON, Appellant.

(No. 54057; ■■■■■■■■

First District—February 24, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Stuart B. Scudder and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Joseph Romano, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

Lee Patterson, Sandra Miller, and Russell Brown were charged with the crime of robbery. Defendant Patterson was convicted in a bench trial and sentenced to two to five years in the penitentiary. The co-defendants were acquitted. Defendant Patterson appeals his conviction on the grounds that he was not proven guilty beyond all reasonable doubt and that he was improperly denied his right to a free preliminary hearing transcript. We need set out the conflicting testimony at trial in some detail.

The complaining witness, Emma Gallatz, testified she was alone walking south on the 700 block of North Clark Street in the City of Chicago around 3:30 on the afternoon of July 2, 1968. Three people came along, walked ahead of her and looked back at her. One of them, Lee Patterson, approached her, twisted her arm, snatched her purse and took the currency from it. He handed some of the money to the other two, Sandra Miller and Russell Brown. Then the three saw a police car coming along and all three threatened to kill her if she called the policeman. They then ran down the street and she ran to the police car. The policeman told her to get in, which she did. She told the officer that she had just been robbed of $75.00. The squad car then proceeded to a parking lot where Patterson, Brown and Miss Miller were standing. Officer Shurtleff got out of the car and noticed $75.00 under some debris in the parking

lot within a few yards of where the three were standing. The officer then arrested all three.

Officer Shurtleff's testimony fully corroborates Mrs. Gallatz's testimony from the time he first noticed her at 3:30 P.M. to the time of the arrests a few minutes later.

Defendant Lee Patterson testified he did not know Emma Gallatz but had seen her around the bars on North Clark Street. He claimed he and Emma Gallatz were talking and drinking together on July 2, 1968, at the 701 Club from 10:30 A.M. to about 4:00 P.M. She was kissing him and rubbing him all up and down his legs at the bar, which everyone in the tavern couldn't help but see. While she was going to the jukebox to put some money in it, he reached in her purse on the bar and stole her money. He then left through the side door. Sandra Miller and Russell Brown followed him. The three of them were standing in the parking lot when he saw the police coming so he threw the money under some debris in the lot. He admitted what he had done was wrong, but claimed what Emma had done was worse. He also stated that he had more common sense than to meet a strange white woman walking down the street, approach her, twist her arm, and take her money.

Russell Brown testified he and Sandra Miller entered the 701 Club some time after 2:30 P.M. He saw Lee Patterson kissing Emma Gallatz at the bar. He knew neither one of them at the time. The bartender let him drink wine from a bottle he brought into the bar. While he was drinking, Sandra Miller told him Lee Patterson left with Emma Gallatz's valuables. He hadn't seen Patterson take Emma Gallatz's money. When Sandra left the bar he followed her and caught up to her in a parking lot on Superior Street near Dearborn when the police came.

Sandra Miller testified that she and Russell Brown walked into the 701 Club somewhere between 2:00 and 2:30 P.M. Lee Patterson was necking with Emma Gallatz at the bar. She knew neither one of them at the time. She saw Patterson pick Emma's purse when Emma got up to go to the juke box. She told Russell Brown about it. She followed Patterson out the side door. Just as she caught up to Patterson in a parking lot she heard a police siren in back of them.

Charles Walker testified he saw Lee Patterson, Emma Gallatz, Russell Brown and Sandra Miller in the bar between 5:00 and 6:00 P.M. He testified he was drinking heavily at the time—beer, wine, whiskey, gin and everything else. He saw Lee Patterson and Emma Gallatz drinking and necking together. He also saw Patterson go into her purse to get something—cigarettes, matches or something. Lee Patterson couldn't have robbed her in his opinion, since they were sitting right there and were so chummy.

On rebuttal, Mrs. Gallatz testified that she had never seen any of the defendants prior to July 2, 1968, the date of the robbery; she had not been at a bar necking with Lee Patterson that afternoon; she had never been in the tavern at 701 North Clark Street, but she had been in a nearby tavern called the B 29 during August and September since the owner was a friend of hers.

At the end of the trial, the court said:

"All right, gentlemen. I do not believe the testimony of the defendants or the witness Walker. I do believe the testimony of the complaining witness and the police officer. However, the evidence against Brown and Miller is not sufficient to support a conviction. They are each found not guilty. The Court finds from the evidence that the defendant Patterson is guilty in the manner and form as charged in the indictment."

Defendant urges that the State failed to prove beyond all reasonable doubt that he committed the crime as charged. Defendant also urges that the findings of guilty of robbery as to one defendant and not guilty as to the two remaining defendants cannot be supported in law or evidence. Defendant relies primarily on *People v. Griffin* (1967), 88 Ill.App.2d 28, 232 N.E.2d 216 and *People v. Ethridge* (1971), (No. 54111) 131 Ill.App.2d 351 N.E.2d, to support his contention.

In *People v. Griffin, supra,* two defendants, Griffin and Depratto, allegedly collaborated to knock an elevator passenger unconscious before robbing him. The complaining witness testified both men hit him. Defendant Depratto admitted he hit the complaining witness. Nevertheless, in a bench trial, the court acquitted Depratto and convicted Griffin. On appeal, the State in its brief still argued the victim was struck almost simultaneously by both defendants. This court reversed Griffin's conviction, holding that no plausible reconstruction of the State's case could support a finding of not guilty as to one accused and guilty as to the other.

In *People v. Ethridge, supra,* Charles Ethridge and three co-defendants were charged with burglary during the April, 1968 civil disorders in Chicago. In a bench trial Ethridge was one of those found guilty while Hampton was found not guilty. Ethridge appealed. This court noted the trial court did not state its reasons for convicting Ethridge and acquitting Hampton. This court also noted the evidence against Hampton was stronger than that against Ethridge; more witnesses saw Hampton carrying merchandise out of the looted store; Hampton's goods were identified as part of the store's merchandise whereas Ethridge's goods were not so identified; and Hampton's credibility was impeached by the introduction of a prior burglary conviction whereas Ethridge's

credibility was not so impeached. Yet Hampton was acquitted and Ethridge was convicted. On review, this court found the discharge of Hampton cast a reasonable doubt upon Ethridge's guilt and reversed the latter's conviction.

We find the case before us distinguishable from *Ethridge* and *Griffin*. In the instant case the evidence against the acquitted defendants Miller and Brown was much weaker than the evidence against the convicted defendant Patterson. Defendant Patterson twisted the complaining witness' arm, snatched her purse and took her money while defendants Miller and Brown were merely handed some money. In *Ethridge*, the evidence against the acquitted defendant Hampton was stronger than the evidence against the convicted defendant Ethridge.

Also, in the instant case, defendants Patterson, Miller and Brown did not perform the same acts. Defendant Patterson physically accosted his victim while defendants Miller and Brown remained behind him. The evidence against Patterson is not identical to the evidence aganst Miller and Brown. In *Griffin*, the complaining witness testified and the State argued that defendants Depratto and Griffin performed the same acts. Both hit the complaining witness almost simultaneously. The evidence against the co-defendants was identical. Consequently, the reviewing court in *Griffin* held no plausible reconstruction of the State's case could support a conviction of one defendant and an acquittal of the other on identical evidence.

■■ For these reasons, *People v. Griffin, supra,* and *People v. Ethridge, supra,* are not in point. See *People v. Barnes* (1969), 118 Ill.App.2d 128, 134, 255 N.E.2d 18 and *People v. Vaughn* (1969), 108 Ill.App.2d 116, 246 N.E.2d 826, which also distinguished *People v. Griffin, supra.* The acquittal of one of two jointly indicted defendants is no reason why the other defendant cannot be convicted. (*People v. Rogers* (1959), 16 Ill.2d 175, 157 N.E.2d 28.) There are many cases in which conviction of one of two or three jointly tried defendants has been upheld. (*People v. Mirabella* (1920), 294 Ill. 246 and *People v. Rogers,* supra.) The finding of a trial court in a non-jury case is entitled to great weight because the court is able to observe the witnesses, judge their credibility and determine the weight to be accorded their testimony. (*People v. Johnson* (1965), 65 Ill.App.2d 361, 213 N.E.2d 288.) We have closely examined the record on which the trial court made its decision and find there is enough evidence, if believeed, to establish the guilt of defendant Patterson beyond a reasonable doubt. We reject defendant's first contention.

■■ Defendant's second contention is that as an indigent he was improperly denied his right to a free preliminary hearing transcript even though he requested the transcript after the defense had rested its case.

Defendant relies primarily on *Roberts v. LaValle* (1967), 389 U.S. 40 to support his contention. We have had occasion to consider a similar contention in *People v. Hubbard* (1969), 107 Ill.App.2d 79, 82, 246 N.E.2d 44. In *Hubbard,* we noted that the indigent defendant in *Roberts v. LaValle* was denied equal protection of the law because a New York statute provided for the furnishing of such a transcript for a fee. We have no such statute in Illinois which provides for the furnishing of a preliminary hearing transcript for a fee or otherwise. Illinois Supreme Court Rule 607, "Appeals by Poor Persons", (Ill. Rev. Stat. 1967, ch. 110A, par. 607(b)), provides only for a transcript to be furnished an indigent of the proceedings of the trial in which the indigent was convicted. We hold that the Illinois statute does not constitute a denial of equal protection and accordingly reject defendant's second contention.

For these reasons, we affirm the judgment of the Circuit Court of Cook County.

Judgment affirmed.

BURMAN and DIERINGER, JJ., concur.