The People of the State of Illinois, Plaintiff-Appellee, *v.* Vernon Hill *et al.*, Defendants-Appellants.

(No. 57764;

First District (1st Division)—August 27, 1973.

James J. Doherty, Public Defender, of Chicago, (Stanley Sacks and Ian Levin, Assistant Public Defenders, of counsel,) for appellants.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and Barry Rand Elden, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE EGAN delivered the opinion of the court:

The defendants, Vernon Hill and James Smith, were indicted with Marvin Hill for the crime of armed robbery of Fred Greene. After a bench trial, Marvin Hill was found not guilty; Vernon Hill and James Smith were found guilty of robbery; and Hill was sentenced to one to four years and Smith to two to six years.

On September 11, 1971, at approximately 3:00 A.M., Fred Greene left the Green Bonnet Lounge located at 7710 South Halsted in Chicago. As he was walking to his car, he was approached by a man that he had never seen before, who asked for a cigarette. He identified Vernon Hill

as that man. The lights from the lounge were on, and there were street-lights in that area. He walked to the corner of Halsted and 77th and saw four men. At the same time that he got to the corner, the man that had asked him for a cigarette said something to the four men, and all five pushed Greene into the alley. One of the men, whom he identified as James Smith, pulled out a gun from inside his jacket, and the other men began going through his pockets. He identified Vernon Hill and Marvin Hill as two of those men. There was a streetlight on the corner where the men first forced him into the alley, and there were also lights in the alley, which were about 30 feet away. The man holding the gun took Greene's billfold out of his back pocket and made him take off his shoes. He was then told to run down the alley. He ran south ten or twelve feet down the alley while the men ran the other way. He came back to get his shoes and then came around the corner of the alley. At that time he saw the men that had robbed him get into a car which was parked on the south side of Halsted near the corner of 77th. He was about five or six feet behind the car on the street side when it pulled away and went north. He saw six people in it, five men and one woman.

After the car drove off, he went to a gas station at 79th and Halsted and called the police, who arrived in about 15 minutes. He described the car as a '64 Buick or Pontiac two-door, either light blue or gray with damage on the left side; the rear view mirror had a brown cover on it and the back window was "brown." He saw part of an Illinois license number, PJ39, but could not see the whole number because the tag was bent. While he was talking to the police, he saw the car go by, and the two policemen he was talking to pursued it. Later, he viewed a line-up at the station that consisted of about nine men and identified Vernon Hill, Marvin Hill, and James Smith. Later, he viewed a female that was in custody but could not identify her as being an occupant of the car.

Officer William Bernhjelm and his partner were the first police officers on the scene. Greene gave him a partial license number of PJ39. While they were talking to Greene a car pulled up to a stoplight at 81st and Halsted facing north. It was a '64 Buick, light blue, with damage to the driver's side, but the police could not see the license number. Bernhjelm asked Greene if that was the car involved in the robbery, and Greene said that it was. Bernhjelm saw a partial license number, PJ39, but, since the license plate was bent, he was unable to see the last two numbers.

At the time the officers stopped the car after pursuit there were three men and a woman in it. Raymond Yow was driving, and James Smith and Marvin Hill were passengers. The full license number was PJ3903, and a registration check showed that the vehicle was owned by Julius

Montgomery, another name used by James Smith. No weapons were found on any of the occupants or in the car. All together the occupants had a very small amount of money, described by Bernhjelm as "pocket change. Maybe a dollar or two."

Officer Ernest Harris and his partner proceeded to 77th and Halsted in response to a radio call for assistance from Bernhjelm and pulled up in front of the defendant's car to block it. James Smith asked if he could talk to him. Smith told him that he did not take part in the robbery and wanted to get cut loose, that Steven Hill and Vernon Hill were the ones that committed the robbery and that they had gone to the York Hotel. Following the conversation with Smith, Harris went to the York Hotel and arrested Vernon Hill, who was in the street in front of the hotel when he arrived. On the way to the station Vernon Hill asked whether they had Marvin, his younger brother. Harris replied that they did, and Vernon Hill said: "Well could you get him cut loose? He didn't have anything to do with it." Harris then asked him who else was there. Hill answered: "Steven and I were there. But Marvin didn't have anything to do with it."

It was stipulated that the evidence heard on the motion to suppress the identification was to be considered by the judge in the trial. During the hearing on the motion, Vernon Hill testified that he was arrested at about 5:00 A.M. at the York Hotel at 69th and Halsted. He denied having been advised of his rights and of being told he had a right to have an attorney present prior to being placed in a line-up. He was told by the two officers that arrested him that they wanted him to stand in a line-up and what he was arrested for. He said this was the only conversation that he had with the police. Marvin Hill testified during the hearing on the motion that he was not advised of his right to have an attorney present during the line-up. Neither testified during the trial.

James Smith testified during the trial that his real name is Julius Montgomery, but he also goes by the name of James Smith. At the time of the occurrence, he owned a light blue 1964 Buick Wildcat with the license number PJ3943. (The police officer testified it was PJ3903.) The car had a covering on the back window and damage to the left front. He was driving the car during the early morning of September 11, 1971. He first got into the car with his brother, his sister, and her boyfriend about 4:15 A.M. He had loaned his car to Raymond Yow at about 10:30 that night as he had done a number of times. Smith was out from about 10:30 P.M. to 4:15 A.M. with his sister and her boyfriend in a lounge at 83rd and Halsted. He could not remember the name of the lounge but said he went in there often. He left the lounge at about 3:15 A.M. with his sister, her boyfriend, and his wife and went to another

lounge that was owned by his sister's boyfriend, located at 73rd and Halsted. He could not remember the name of that lounge. He arrived there sometime after 3:00 A.M. and remained about ten minutes and asked to be taken to look for his car. He had made arrangements with Yow to return the car to 83rd and Halsted at 2:30 A.M. so that he could go home because he had to work the next morning. Yow never showed up. He left that lounge and rode around looking for his car with his sister's boyfriend. He did not know the name of the boyfriend. He saw his car at 79th and Halsted in front of Glady's House, which is a lounge. He went into the lounge and found Yow and told him that he was looking for his car. Yow told him that he would have come back but that he had met the young lady that he was with. Smith told Yow to drive because Yow was with Margaret Hill, and she wanted him to drop her off. He was first going to let Raymond drop off Marvin Hill and his girlfriend. The record does not reflect where he found Marvin and his girlfriend.

The defendants' arguments may be summarized as follows: (1) The court's finding of not guilty as to Marvin Hill is so irreconcilable with the finding of guilty as to Vernon Hill and James Smith as to create a reasonable doubt of their guilt. (2) Since the indictment charged and the evidence showed armed robbery, the court's finding of guilt of plain robbery indicated that he had a reasonable doubt of the guilt of the defendants.

In support of their first argument, the defendants rely on three cases: *People v. Ethridge,* 131 Ill.App.2d 351, 268 N.E.2d 260; *People v. Griffin,* 88 Ill.App.2d 28, 232 N.E.2d 216; and *People v. Patterson,* 52 Ill.2d 421, 288 N.E.2d 403. In *Ethridge,* the defendant was indicted with three other men, including Willie Hampton. The police officers testified that they saw Etheridge in a store and saw him emerge carrying towels. When Ethridge saw the police he dropped what he was carrying and started to walk away. Two bottles of perfume were found in his pockets after he was arrested. The same two officers testified that they saw Hampton coming out of the store at the same time as Ethridge with two boxes in his hands. They could see that the boxes contained stockings and handkerchiefs. Another police officer testified that he saw Hampton come out of the store with boxes in his possession, and when Hampton saw the police he dropped the boxes and started running. The stockings Hampton dropped were identified as part of the store's merchandise; the perfume found on Ethridge was not. Hampton's credibility was impeached by the introduction of a prior burglary conviction; Ethridge's credibility was not impeached. Ethridge was found guilty, but Hampton was found not guilty. The appellate court in reversing said, at page 352:

"In finding Ethridge guilty the court accepted the testimony of [the officers]; in finding Hampton not guilty the court rejected testimony. If [the officers] were not to be believed when they testified against Hampton, they were not to be believed when they testified against Ethridge."

In *Griffin*, the defendant and DePratto were indicted for robbery. The complaining witness testified that the two defendants entered an elevator, struck him and knocked him unconscious. Upon regaining consciousness, he discovered that he had been robbed of a silver dollar, assorted change, an alligator wallet, a gold fountain pen, and a pair of spectacles. DePratto lived with his mother on the 14th floor of the same building. She testified that Griffin knocked on her door and asked for a teaspoon, explaining that it was for a fellow who had a seizure on the elevator. She went to the elevator and, finding the complainant in a pool of blood, immediately called the police. When the police arrived she pointed out her son and Griffin as the persons who robbed the man in the elevator. The defendants were searched, but neither had the wallet, fountain pen, spectacles, or silver dollar. DePratto testified that he and Griffin thought the complaining witness was drunk and had fallen; that while trying to assist him to his feet, the complainant had hit DePratto in the mouth, and DePratto hit him back. The officer mistakenly identified Griffin as DePratto and DePratto as Griffin at the trial. The complaining witness also confused the two men. The trial judge acquitted DePratto and convicted Griffin. The Appellate Court said, at page 31:

"[T]here is no plausible reconstruction of the State's case which would support the finding of not guilty as to DePratto and guilty as to Griffin."

In *Patterson*, the complainant was walking in the 700 block of North Clark Street at approximately 3:30 P.M. when, she testified, she saw three persons she identified as Patterson, Sandra Miller and Russell Brown walking ahead of her. Patterson approached her, demanded money, wrenched her purse from her hand and took $75. Each then threatened to kill her if she reported the incident to the police. She saw Patterson give Miller and Brown some of the money, and they went to a nearby lot. She hailed a passing police car and accompanied the officer to the lot where the defendants were apprehended. Patterson testified that he had seen the complainant in the vicinity before but met her in a tavern on the day of the alleged offense. They were drinking together from 10:30 A.M. to 4:00 P.M., and she had been caressing and kissing him at that time. When she went to the front of the tavern to play the juke box, he removed money from her purse and fled through a side door. His testimony was corroborated, not only by his two co-defendants,

but by another independent witness. The co-defendants were found not guilty and Patterson guilty. In addition to noting the inconsistency in the finding, the Illinois Supreme Court pointed out the various aspects of the complainant's testimony that seriously detracted from her credibility.

The cases are distinguishable from the case before us. In this case, the evidence is not identical as to all defendants as it was in *Griffin;* nor was the evidence stronger against Marvin Hill as it was in *Ethridge;* and in *Patterson,* the court indicated that the evidence was insufficient against all three defendants.

■■ There are a number of cases where the same contention made here was decided adversely to the defendants, including *People v. Morris,* 9 Ill.App.3d 979, 293 N.E.2d 410, (abstract opinion); *People v. Fort,* 133 Ill.App.2d 473, 273 N.E.2d 439; *People v. Jones,* 132 Ill.App.2d 623, 270 N.E.2d 288; and *People v. Vaughn,* 108 Ill.App.2d 116, 246 N.E.2d 826. In *People v. Jones,* 132 Ill.App.2d at 625, the court said:

> "The rule is that where a verdict is reversed for inconsistency in such cases, the verdicts must have been based on precisely the same evidence, identical in all respects as to both defendants. 22 A.L.R.3d 721."

A number of damaging facts appear from the evidence against Smith and Vernon Hill that are not applicable to Marvin Hill. As to Smith, he was the man who had the gun, a circumstance that would reasonably focus more attention on him. (See *People v. Hudson,* 46 Ill.2d 177, 189, 263 N.E.2d 473.) He was the owner of the car identified as the one used to flee the scene; and immediately after his arrest, he made statements to the police indicating knowledge that a robbery had taken place and of the identity of the participants. As to Hill, he provided a greater opportunity for identification; and he made a confession.

■■ In addition, the trial judge had the right to consider the statement of Vernon, which exculpated Marvin, in determining Marvin's innocence. In oral argument, the attorney for Smith argues that the statement of Vernon Hill was hearsay. If hearsay to which no objection is made may be considered in convicting (see *People v. Jones,* 2 Ill.App.3d 575, 277 N.E.2d 144), we see no plausible reason why it cannot be considered in acquitting. Parenthetically, we note that the officers testified that both Smith and Vernon Hill named *Steven* Hill as another participant.

In the second part of their argument, the defendants contend that they "were either guilty of armed robbery or not guilty"; and that the not guilty finding of armed robbery, the finding of not guilty as to Marvin Hill and "the lenient sentences imposed illustrate the trial judge's uncertainty as to whether [the defendants] were guilty."

██ Hill at the time was on probation for one year for criminal trespass to a vehicle, and the State recommended a sentence of three to six years. Smith was on probation for five years for robbery and bail jumping after serving six months in the County Jail as a condition of probation. The State recommended a sentence of four to eight years. We believe the sentences were not "lenient" and reflect no deviation from the statutory guidelines.

At the close of all the evidence the court made the following statement:

> "As to James Smith there will be a finding of guilty. I will make it as to plain robbery. The reason I am making it plain robbery is under the new code—well, I will make it as to plain robbery. This is not the case to figure out the issue that we have discussed with reference to proof of the element of arms in light of the new increased penalty."

While neither the State nor defendants have submitted any authority dealing directly with this question, analogous authority exists in cases where the defendant was charged with rape and found guilty of assault to rape. In *People v. Meyers*, 381 Ill. 156, 44 N.E.2d 870, the court affirmed a conviction of assault to rape under an indictment for rape where the proof established all of the elements of rape.

The remarks of the trial judge do not reflect any uncertainty of the guilt of the defendants (*cf. People v. Olson*, 3 Ill.App.3d 240, 278 N.E.2d 861), but concern over legal problems arising under the new correction code. We have not reached the point, and hope we never will, where a defendant may impute error to the criminal trial judge, already beset with problems peculiarly complex, because he gave the defendant the benefit of the doubt. For these reasons the judgment of the circuit court is affirmed.

Judgment affirmed.

BURKE, P. J., and GOLDBERG, J., concur.