310

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL PHOENIX, Defendant-Appellant.

(No. 61273;

First District (1st Division)—September 15, 1975.

Paul Bradley and Steven Clark, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Bertina E. Lampkin, Assistant State's Attorneys, of counsel), for the People.

PER CURIAM (Before Goldberg, Egan and Simon, JJ.):

The defendant, Michael Phoenix, was indicted along with William Jones for the June 14, 1973, armed robbery of Dennis Smith and Edward Siudzinski (Ill. Rev. Stat. 1973, ch. 38, par. 18—2). Following a bench trial at which Jones was acquitted, the defendant was convicted of robbery and sentenced to not less than 3 nor more than 9 years in the Illinois State Penitentiary. (Ill. Rev. Stat. 1973, ch. 38, par. 18—1.) On appeal, defendant contends he was not proven guilty beyond a reasonable doubt because the victims' identification of him was faulty and that Jones' acquittal on the same evidence is inconsistent with his conviction.

Dennis Smith and Edward Siudzinski had been staying at the Holiday Inn at North Avenue and Mannheim Road in Melrose Park for several days when these events occurred shortly after midnight on June 14, 1973. At the time, both men were in Smith's room which was across the hall from Siudzinski's room, watching television and working on a model

airplane and a model boat. Smith testified that two men, whom he identified in court as the defendants, entered the room and announced a holdup. Jones, who was carrying the gun, ordered him to close the drapes and he did so. Jones then "herded" the two men into the bathroom while Phoenix took his wallet and watch off his wrist. Jones then gave the gun to Phoenix, who held the men in the bathroom at gunpoint for approximately 10 minutes while Jones took a key to Siudzinski's room and left. The whole time he was in the bathroom, approximately 10 minutes, he was looking at the gun and at Phoenix, who was holding the gun. Phoenix held the men at gunpoint until Jones knocked on the door and Phoenix let him in, at which point the defendants shut the bathroom door and told the men to stay in there. A few seconds later when the men heard the outer door close, they called the front desk to get the police. Under cross-examination by Jones' counsel, Smith gave conflicting testimony as to what Jones was wearing. First he testified Jones was wearing blue jeans and white tennis shoes and a "kind of simulated leather affair" pullover tan shirt. He then testified Jones was wearing a black T-shirt with green horizontal stripes every 4 or 5 inches. He did not know Jones prior to June 14 and learned his name from a Melrose Park detective who identified Jones as the man in a picture Smith picked out of a group of mug shots shown to him the morning following the robbery.

Siudzinski testified he was "engrossed" in what he was doing when the two men came in pointing a gun at them and saying this was a holdup, shut the drapes. Smith shut the drapes and the men asked where things were and herded them into the bathroom. Jones, who had the gun, then handed it to Phoenix and asked where Siudzinski's wallet was. When he told Jones his room was across the hall, Jones told Phoenix to stand guard, he was going across the hall to see what he could find and Siudzinski did not see Jones again. Phoenix threatened to shoot if either of the men moved. While he was in the bathroom he could tell where Phoenix was because he was "looking right at him." After a period of time, the outside door opened, Phoenix looked out and closed the bathroom door, saying, "Don't come out, I'm going to close this door, and you come out, we're going to shoot you." When the door closed, they waited a while and then Smith called the front desk for the police. When he went to the room he found the door open, and dresser drawers open and his wallet missing. He identified the wristwatch, which was admitted in evidence, as the one he was wearing on June 14. He recognized the watch because it had some scratches on the back of it; he had sent the whole watch to Timex Corporation and when he got it back, those scratchings were on it right across the whole back end of the watch. The day following the robbery he identified the defendant Phoenix out of a six-man lineup and

subsequently selected Jones' photograph from a group of seven or eight which did not include a photograph of Phoenix. Under cross-examination by Jones' counsel he testified Jones was wearing a wide-striped T-shirt, a basic black or blue shirt with horizontal stripes through it, and no hat. Jones was not wearing a beard, "just a portion that he didn't shave, like a goatee."

Chicago Police Officer Ronald Wallace testified he arrested the defendant, Phoenix, on June 14, 1973, at approximately 10 or 10:30 at night at which time he was wearing a wristwatch. About 15 minutes after arriving at the station, another officer, Officer Travis, asked the defendant, "Where is the watch?" The defendant answered that he didn't own a watch and Officer Wallace had the defendant stand up and was leading him back to the lockup when the watch was discovered underneath the chair in which the defendant had been sitting. He identified this watch as the same watch Siudzinski had identified.

Defendant first contends he was not proven guilty beyond a reasonable doubt because his identification by the victims was vague, doubtful and uncertain. Both Smith and Siudzinski testified they were in the bathroom approximately 10 minutes. Smith testified he was looking at Phoenix and Siudzinski testified he was "looking right at" Phoenix the whole time. Despite cross-examination, both witnesses were firm in their identification of Phoenix as one of the robbers. Both witnesses had adequate opportunity to observe the man who held the gun on them in the bathroom and were positive in their identification of Phoenix at trial. Since a positive identification by a single witness with ample opportunity to observe is sufficient to support a conviction, the defendant was proven guilty beyond a reasonable doubt. *People v. Williams* (1975), 60 Ill.2d 1, 12, 322 N.E.2d 819.

■■ Defendant next contends that the "sole difference" in the evidence against him as against Jones was his possession of the watch Siudzinski identified at the trial as belonging to him. Defendant, thus, argues that the acquittal of Jones is a verdict inconsistent with his conviction, and that, therefore, his conviction must be reversed. However, as the State points out, citing *People v. Hill* (1973), 14 Ill.App.3d 368, 373, 302 N.E. 2d 403, verdicts will not be reversed for inconsistency except when based on precisely the same evidence, identical in all respects as to both defendants. In the case at bar, the witnesses had a significantly greater opportunity to observe Phoenix than Jones since it was Phoenix who was present the greater part of the time. The victims' opportunity to observe Jones was limited to the beginning phases of the robbery when they were surprised and being ordered about. Siudzinski for example, testified he was "engrossed" in building his model airplane when the robbery began.

After Jones left, there was a 10-minute period of quiet when both victims had an unobstructed view of Phoenix. And as stated above, their testimony identifying Phoenix at the trial was not doubtful or uncertain, but positive. Moreover, as the defendant acknowledges, Phoenix had in his possession when arrested the same watch that Siudzinski identified as being the one taken from him during the robbery.

■■ The evidence against the defendant was stronger than that against Jones. For example, Smith's testimony identifying Jones was impeached because of the apparent conflict in his testimony concerning the clothes Jones was wearing at the time of the robbery. While Siudzinski testified he picked Phoenix out of a lineup, he made only a photographic identification of Jones. Since Siudzinski's testimony about what Jones was wearing conflicted with Smith's testimony which was, itself, contradictory, the trial court could have concluded that the abruptness of the crime and the limited opportunity of the witnesses to observe Jones, as compared to Phoenix, created a reasonable doubt about Jones' guilt. Under these circumstances, however, since the evidence against Phoenix was much stronger than against Jones, there was no inconsistency between the acquittal of Jones and conviction of Phoenix. Therefore, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.