THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID HILLER, Defendant-Appellant.

First District (3rd Division)    No. 78-7

Opinion filed December 31, 1980.

Burton Sapoznick and Robert P. Sheridan, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and Thomas Bucaro, Assistant State's Attorneys, of counsel), for the People.

Miss PRESIDING JUSTICE McGILLICUDDY delivered the opinion of the court:

Following a bench trial the defendant, David Hiller, was convicted of the offense of rape (Ill. Rev. Stat. 1973, ch. 38, par. 11—1) and sentenced to a term of four years to four years and a day. On appeal the defendant contends (1) that the acquittal of a co-defendant raises a reasonable doubt as to his guilt and (2) that the court's restriction of his cross-examination of a witness denied him a fair trial.

At trial the complainant testified that in June of 1974, when she was 19 years of age, she moved into the apartment of Thomas and Maureen Hendrickson at the invitation of Maureen. It was agreed that the complainant would sleep on the sofa bed in the living room of the one-bedroom apartment.

The complainant soon discovered that Thomas Hendrickson's boss, Eugene Gretchokoff, also resided in the apartment and slept on the sofa bed. Subsequently, the complainant and Gretchokoff had sexual relations several times. The last time the couple had intercourse was on June 29, 1974, and Gretchokoff moved out of the apartment on July 2, 1974.

On July 3, 1974, the complainant returned from work at approximately 5:30 p.m. Maureen was in the apartment and subsequently Thomas Hendrickson, her husband, Steve McKinney and the defendant arrived. At the complainant's request, McKinney drove her to her parents' home to pick up some clothes. They stopped at a restaurant before returning to the apartment at approximately 11:30 p.m. When they

returned Thomas Hendrickson and the defendant were drinking beer and Maureen and her step-daughter were sleeping in the bedroom. The complainant took a shower and retired for the evening.

Subsequently, the complainant was awakened by the tearing of her clothes. She saw Hendrickson, McKinney and the defendant naked in front of her. The complainant testified that each man forcibly had intercourse with her, while the others held her down. She stated that during the attack Maureen was in the kitchen talking on the telephone.

The complainant did not leave the apartment until 11 a.m. the following morning. When she left Thomas Hendrickson picked up a camper's knife from the table and warned her not to say anything.

The complainant further testified that she went to her grandfather's home and telephoned Gretchokoff. After she told him that she had been raped, Gretchokoff called the police. Two police officers met the complainant and her grandfather at the Hendricksons' apartment. The complainant told the officers that she had a disagreement with her friend and that she wanted to get her clothes out of the apartment. After the complainant retrieved her clothes from the apartment, her grandfather convinced her to inform the officers about the rape.

The officers took the complainant to Holy Cross Hospital where she was given a physical examination. Vaginal smears taken from the complainant indicated the presence of sperm.

Conflicting testimony was offered concerning the presence of bruises on the complainant's body on July 4. Her grandfather testified that her throat, arms and wrists were beginning to bruise, while Gretchokoff testified that when he saw the complainant later that afternoon there was a bruise below her left eye. Investigator Harry Kunz, of the Chicago Police Department, who interviewed the complainant at the hospital, observed bruises on her neck, arms, wrist and leg. However, neither patrolman Donald Fatime, who accompanied the complainant into the Hendricksons' apartment, nor Dr. Kenneth Wilcox, who examined her at the hospital, found any evidence of bruises.

The defendant denied the complainant's accusation of rape. He admitted that he, his wife and children visited the Hendricksons' apartment on the evening of July 3. However, he testified that he and his family left the apartment around 8 p.m., and that he did not return that evening. The co-defendant, Thomas Hendrickson, did not testify.

The State presented Maureen Hendrickson, who was divorced from Thomas Hendrickson at the time of trial, as a rebuttal witness. The State advised the court that Maureen believed that Hendrickson would testify also. She was instructed not to give any testimony which pertained to her former husband.

Maureen testified that the only men in her apartment that evening

were Hendrickson, McKinney and the defendant. While two men restrained the complainant, the defendant had intercourse with her. Maureen also stated that McKinney and a third man had intercourse with the complainant. When she attempted to interfere with the attack, Maureen was struck by Hendrickson.

Maureen admitted that the State originally had charged her with unlawful restraint in connection with the incident. She also stated that during the attack, she spoke to the defendant's wife on the telephone and described to her the activities of the three men.

The defendant's attorney attempted to examine Maureen concerning her current relationship with her former husband. His questions concerning a recent fight between them were objected to by Hendrickson's attorney and sustained by the trial court. In addition, the court refused to allow the defendant to pursue Maureen's statement that she was "in fear of her life" at the time of the incident because her answer pertained to her former husband.

Karen Hiller, the defendant's former wife, testified in surrebuttal. She stated that she did not receive a telephone call from Maureen Hendrickson between 12 and 2 a.m. on July 4, and that she was at home in bed with the defendant at the time.

At the conclusion of the evidence, the trial court found Thomas Hendrickson not guilty and the defendant, David Hiller, guilty of rape.

The defendant argues that because there was no difference in the evidence which resulted in his conviction and the acquittal of the co-defendant, the acquittal of Hendrickson raises a reasonable doubt as to his guilt. The State responds that the evidence differs in that Maureen testified that she witnessed the defendant's attack of the complainant and that her testimony contradicted the defendant's alibi.

The defendant replies that although Maureen was prohibited from testifying that Hendrickson had sexual intercourse with the complainant, this fact is the substance of her testimony. Maureen stated that Hendrickson, McKinney and the defendant were the only men present in the apartment that evening and that three men had sexual intercourse with the complainant. She further testified that Hendrickson struck her when she attempted to interfere. Therefore, the defendant concludes that there was no difference in the evidence presented against the two defendants.

■ It is a general principle of law that the failure to convict a co-defendant does not raise a reasonable doubt as to the guilt of the other defendant unless the evidence presented against both parties is identical in all respects. (*People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19. See Annot., 22 A.L.R.3d 717 (1968).) However, the fact that a complaining witness had a better opportunity to identify one of the defendants (*People v. Phoenix* (1975), 32 Ill. App. 3d 310, 336 N.E.2d 515; *People v. Taylor*

(1974), 25 Ill. App. 3d 396, 323 N.E.2d 388) or that the identification was corroborated by other evidence (*People v. Bradshaw* (1978), 65 Ill. App. 3d 76, 382 N.E.2d 432) will support inconsistent verdicts.

In the instant case the complainant's testimony against both defendants was identical. She positively stated that both defendants forcibly had intercourse with her. One cannot distinguish the complainant's ability to identify the two defendants since she knew both men previously.

However, the evidence presented against both defendants was not identical in all respects. Hendrickson did not testify, while the defendant did. The defendant denied raping the complainant and offered an alibi. As a rebuttal witness, Maureen contradicted his testimony by asserting that she witnessed the defendant raping the complainant.

■■ Rebuttal evidence is admissible where it explains, repels, contradicts or disproves the evidence of the defendant, even if the evidence also would have been admissible as part of the State's case in chief. (*People v. Waller* (1977), 67 Ill. 2d 381, 367 N.E.2d 1283.) Maureen's testimony was, therefore, competent evidence to contradict the defendant's denial of participation in the rape.

Although we might agree with the defendant that the substance of Maureen's testimony was that Hendrickson also raped the complainant, her testimony was not competent evidence against Hendrickson. Because Hendrickson did not testify at trial, there was no evidence for Maureen to rebut. When defendants are tried jointly, evidence competent against one of them is admissible when the trial judge limits the evidence to the particular party implicated by it. *People v. Hoover* (1976), 35 Ill. App. 3d 799, 342 N.E.2d 795.

The testimony of the victim alone is sufficient to support a conviction for rape where that testimony is clear and convincing. Otherwise, the victim's testimony must be corroborated. *People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 390 N.E.2d 1339; *People v. Graham* (1978), 60 Ill. App. 3d 1034, 377 N.E.2d 179.

In reviewing the evidence against Hendrickson, the trial court apparently determined that the complainant's testimony alone was not clear and convincing. However, in reviewing the evidence against the defendant, the court also considered Maureen's corroborating testimony. Because the evidence against the two defendants was not identical in all respects, Hendrickson's acquittal does not raise a reasonable doubt as to the guilt of the defendant.

The defendant also argues that the court's restriction of his cross-examination of Maureen denied him his constitutional right to confront his accuser. The scope of cross-examination rests within the sound discretion of the trial judge whose restrictions will not be reversed except in a case of a clear abuse of discretion. *People v. Jefferson* (1978), 64 Ill. App. 3d 200, 380 N.E.2d 1070.

The defendant first objects to the court's refusal to permit Maureen to explain why she was in fear of her life on the night of the alleged rape. He contends that this refusal prevented him from inquiring into the details of the incident. We disagree.

■■ The court refused to allow Maureen to explain her statement because she indicated that the answer involved Hendrickson, who had not testified. Such a refusal did not prohibit the defense from questioning Maureen concerning the defendant's involvement in the rape or Maureen's ability to witness the defendant's actions. Moreover, the record reveals that the defendant's attorney did vigorously cross-examine Maureen concerning her testimony. We cannot say that the trial court's restriction constituted an abuse of discretion.

The defendant also alleges that the court erred when it refused to allow his attorney to question Maureen concerning a recent fight with Hendrickson. It is the defendant's contention that such testimony would have revealed the extent of her hostility toward Hendrickson which could have influenced her testimony.

Although the scope of cross-examination is generally within the trial court's discretion, the widest latitude should be allowed the defendant on cross-examination to demonstrate the bias of a witness. (*People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708; *People v. Mason* (1963), 288 Ill. 2d 396, 192 N.E.2d 835.) A witness' interest in the outcome of a case, or a witness' hostility toward a defendant, is relevant to establish bias, because such feeling of hostility can influence the manner in which the witness testifies. (*People v. Mullinax* (1979), 67 Ill. App. 3d 936, 384 N.E.2d 1372.) To be admissible, however, the evidence showing bias must be direct and positive, not remote or uncertain. *People v. Lenard* (1979), 79 Ill. App. 3d 1046, 398 N.E.2d 1054.

■■ We believe that the trial court was fully aware of the possible bias of the witness. Maureen testified that she and Hendrickson had obtained a divorce and that he struck her on the night of the incident. Such testimony strongly suggested the possibility of Maureen's hostility toward her former husband. However, Maureen testified as a rebuttal witness against the defendant, not against Hendrickson. No evidence suggested that Maureen possessed any feelings of hostility toward the defendant. Evidence concerning a possible fight between the witness and Hendrickson was too remote to show the bias of the witness toward the defendant and, thus, was inadmissible. *People v. Lenard.*

Accordingly, the judgment of the Circuit Court of Cook County is hereby affirmed.

Affirmed.

McNAMARA and RIZZI, JJ., concur.