(No. 36170.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. CURTISS BRADLEY, Plaintiff in Erorr.

*Opinion filed May 20, 1964.*

EDWARD L. KELLY, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and WILLIAM J. MARTIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Curtiss Bradley and Oscar Smith were jointly indicted in the criminal court of Cook County upon a charge of

armed robbery. They were jointly tried, Bradley by a jury, and Smith, who had waived his right to a jury trial, by the court. (See *People* v. *Pulaski,* 15 Ill.2d 291, 299.) The jury heard the State's evidence against both Bradley and Smith, but it heard only the defense evidence offered by Bradley. After Bradley's attorney announced that he had closed his case, and before the prosecution offered rebuttal evidence, the trial judge severed the two cases with the result that the jury did not hear the defense evidence offered by Smith. The judge found Smith not guilty. The jury found Bradley guilty, and he was sentenced to the penitentiary for a term of 10 to 20 years. Subsequently, Bradley was convicted of assault with intent to kill, committed during the robbery, after a bench trial before a different judge. For that offense he was sentenced to the penitentiary for a term of 1 to 20 years, to run concurrently with the sentence for armed robbery. The two judgments have been consolidated for review on this writ of error.

We consider first the trial for armed robbery. The principal witness for the State was Ralph Moore. He testified that at 8:45 A.M. on August 28, 1959, two men, whom he identified as Bradley and Smith, entered the H & S Food Mart where he was employed as store manager and announced, "This is a stick-up." Smith ordered Sidney Rudolph, one of the proprietors of the store, to open the cash register. He took $30 from the register and $50 from Rudolph's wallet and then hit Rudolph on the head with a pistol. Moore showed the other robber, whom he identified as Bradley, that his billfold was empty and then began to step backward toward the rear of the store. He testified that he reached a gun and fired two shots at Bradley who "grabbed his right side" and fired back three shots. The robbers then fled, pursued for a short distance by Moore and Rudolph, and managed to escape. Moore testified that he saw drops of blood on the sidewalk.

Smith was arrested and identified by Moore the day

after the robbery. Approximately five weeks later Bradley was arrested. An officer testified that Bradley's shirt was opened in the squad car and that there was a scar on his right side just above the waist. Two officers testified that Bradley told them that the scar was caused by an accidental gun shot and had been treated by a girl friend. Bradley was taken at once to the H & S Food Mart in the squad car. An officer went into the store and told Moore, "We want to see if you can identify this man as the holdup man." Moore testified that he went outside and identified Bradley. Later that same day Bradley was placed in a four-man line up at a police station, and Moore again identified him.

At the trial Moore testified that he could identify Bradley only by his clothes. He said that Bradley wore a colored sport shirt, blue or black trousers, and carried a brown jacket. Sidney Rudolph, the proprietor, gave a similar description of Bradley's clothes but testified that he was not able to identify either of the defendants. Two customers, a man and a woman, were in the store at the time of the robbery. The woman was a regular customer. Neither was called as a witness.

Bradley testified that he had been working in a restaurant from 6:00 A.M. until 3:30 P.M. on the day of the robbery and that a cashier was with him all day. He also testified that Moore had been unable to identify him at the food mart on the day of his arrest and that he had told the officers that the scar on his body was caused by a nail against which he inadvertently scraped himself while at work. Doctors at the county jail had examined the scar but did not testify.

In his opening statement the prosecutor announced that he proposed to prove that Smith resisted arrest and was captured only after he had been shot by police officers. In response to an objection by Bradley's attorney the judge said, "I won't let him tell any conversations, but I will let

him show conspiracy." During the trial when a police officer began to testify as to the circumstances of Smith's arrest, the judge stated, "This testimony goes only to the defendant Smith. At this point the jury should not consider this testimony against Bradley." The officer then testified before the jury that when he stopped Smith on the day after the robbery, Smith resisted arrest and fled. The jury was then withdrawn and the officer testified that Smith was pursued, shot and captured.

When Bradley's attorney announced that his case was closed, the judge directed that Smith be taken out of the court room saying, "He has no part in this now. Actually there was a severance, but there was a stipulation all the evidence be heard." The record, however, does not contain any order of severance or any such stipulation.

Up to that point, the trial had proceeded as a joint trial of both defendants. In our opinion it was error for the court to sever the two cases when it did. The jury had heard the witness Moore positively identify both defendants, and it also heard the testimony concerning Smith's attempted flight when he was arrested the day after the robbery, which apparently corroborated Moore's identification of Smith. Evidence which showed that Moore was wrong as to Smith would have tended to discredit his identification of Bradley. Since the jury had heard Moore identify Smith as well as Bradley, it should have been permitted to hear the evidence offered in defense by Smith as well as that offered by Bradley. The testimony that persuaded the trial judge that Smith was innocent is not contained in the record that is before us, but whatever it was it must have specifically contradicted Moore's positive identification of Smith, made the day following the crime, or it would not have produced a finding of not guilty.

A defendant's motion for severance at the conclusion of the State's evidence has been held to come too late.

(*People* v. *Watt,* 380 Ill. 610.) No reason is apparent why a different rule should be applied in the situation now before us. Although a trial judge has broad authority in the matter of granting a severance, his action is reviewable for abuse of discretion. (*People* v. *Clark,* 17 Ill.2d 486; *People* v. *Lindsay,* 412 Ill. 472.) No circumstances appear in the record in this case that warranted or necessitated a severance during the course of the trial.

The failure of counsel for Bradley to object to the severance does not foreclose review. In a criminal case in which the evidence is closely balanced this court has held that it may consider errors that have not been properly preserved for review. (*People* v. *Nowak,* 372 Ill. 381; *People* v. *Gardiner,* 303 Ill. 204; *People* v. *Schulman,* 299 Ill. 125.) The Code of Criminal Procedure provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. Rev. Stat. 1963, chap. 38, par. 121—9(a).

In this case, Moore's identification was crucial. The method by which he initially identified Bradley five weeks after the robbery left much to be desired. His subsequent selection of Bradley, on the same day, from a lineup of four men can hardly be said to have added to his initial identification. It appears from the record that at one time Moore had identified Smith, rather than Bradley, as the man who had stood in front of him during the robbery. And Moore had testified at the preliminary hearing that Bradley had a moustache, but at the trial he testified that Bradley did not have a moustache. We can not say what would have been the verdict of the jury if they had been permitted to hear the evidence that satisfied the trial judge that Moore's identification of Smith, made the day after the occurrence, was erroneous.

Because we have reached the conclusion that the judgment of conviction for armed robbery must be reversed for

the reasons stated, it is unnecessary to consider other errors that have been relied upon for reversal of that judgment. They are not likely to occur upon another trial.

The trial upon the indictment charging assault with intent to kill came on for trial before a different judge, and it proceeded under the influence of the verdict of the jury in the robbery case. This is particularly apparent from the judge's conduct when Sidney Rudolph was called as a witness. Moore was the first witness, and his cross-examination by Bradley's attorney aimed at establishing uncertainty on the part of Moore when Bradley was brought to the store in the squad car for identification. His questions were concerned not only with Moore's reaction but also with Rudolph's role in that identification. Rudolph followed Moore on the witness stand. As soon as he had identified himself the trial judge took over his examination and the following occurred:

"The Court: Just a moment, Mr. Rudolph. You were here and you heard the testimony of Mr. Moore about this robbery taking place. What we are interested in here is whether or not you can identify this man as one of the robbers.

Witness: No, I can't.

The Court: All right, step aside."

The peremptory dismissal of this witness, together with other indications of impatience, suggest that the trial judge was relying upon the record and verdict in the armed robbery trial, and that the second trial was regarded as a required formality rather than as an independent inquiry into the truth of the charge. We are of the opinion, therefore, that the ends of justice will be better served if the judgment of conviction upon the charge of assault with intent to commit murder is reversed and that cause is also remanded for a new trial.

*Judgments reversed and remanded.*