People of the State of Illinois, Plaintiff-Appellee, v. Timothy DeBerry, Defendant-Appellant.

Gen. No. 49,649.

First District, Fourth Division.
July 14, 1965.
Rehearing denied October 7, 1965.

Joseph A. Spitalli and Hugh M. King, and Raymond, Mayer, Jenner & Block, all of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant appeals from a conviction of the crime of armed robbery after a jury trial, and a sentence of not less than 25 years nor more than 50 years in the penitentiary.

Defendant contends that the trial court erroneously refused to suppress certain evidence; that he was not proven guilty beyond a reasonable doubt; and that certain alleged errors in rulings on the admission of evidence deprived him of a fair trial.

Defendant's initial contention is that the trial court, in a hearing on a petition to suppress evidence, erroneously refused to grant his motion to suppress certain evidence seized at the time of the arrest: a driver's license and a Sears payment book, both bearing the name "John Frieson."

Chicago Police Officer Frank Novak testified that he arrested defendant on October 12, 1962; that at the time of the arrest the officer did not have an arrest warrant; that he did not see him violating ordinances or laws of the City of Chicago or the State of Illinois; that he told defendant he "wanted to talk to him about a burglary."

Officer Novak testified that one month earlier, on September 10, 1962, he questioned Mr. Gene Barry (not the defendant) concerning American Express money orders that had been passed in Chicago; that:

> I asked Mr. Barry where he had gotten these American Express Money Orders and he told me he had gotten them from Timothy DeBerry. I also asked him about the identification that was used in the passing of these American Express Money Orders, and he told me that he had gotten them from Timothy DeBerry. I saw these identification cards and I remember that some of the names were, "Epperson," "Hughes," "Lucille Jordan" and "Easily." I asked Mr. Barry where he obtained the identification cards bearing the name "Lucille Jordan," and he told me he had gotten them from Timothy DeBerry.

Novak further testified that Gene Barry was arrested by him and two FBI agents; that thereafter Novak contacted Lucille Jordan who identified photostatic copies of the identification papers as being hers and told him that her wallet, containing her cards, had been

taken during a burglary of her home on August 17, 1962.

Defendant testified that when arrested he asked the officer:

> . . . if he hadn't been notified that somewhere between the 15th and 25th of September I had surrendered to the FBI and if he wanted to question me in regard to a burglary why didn't he do it at that time.

Defendant moved to suppress the two pieces of identification bearing the name "Frieson" which had been taken from him by Officer Novak on October 12, 1962. The basic question is whether the arrest of defendant without a warrant was legal.

The statute (Ill Rev Stats c 38, § 107–2–c (1963)) provides that a peace officer may arrest a person without a warrant if the officer "has reasonable grounds to believe that *the person* is committing or *has committed an offense*" (emphasis supplied).

■■ In the instant case, the procedure turns, in part, on whether Gene Barry met the threshold requirements of an informer. In People v. Parren, 24 Ill2d 572, 576, 182 NE2d 662, the court stated:

> As a general proposition, "[A]n uncorroborated tip by an informer whose identity and reliability are both unknown does not constitute probable cause to make an arrest." (Citing cases.)

However, in the instant case, Officer Novak received information from the identified informer, Gene Barry, who was also an alleged coconspirator with defendant in passing money orders. In Thomas v. U. S., 281 F2d 132, peace officers, after being told by a thief that stolen articles had been sold to defendant, went to defendant's store without a warrant and arrested him for unlawful possession of stolen articles. The court

held that the arrest and subsequent search and seizure were valid.

Officer Novak corroborated the information when he subsequently questioned Lucille Jordan about the identification papers bearing her name. We hold that the arrest was legal because Officer Novak had "reasonable grounds" to believe that DeBerry had committed an offense.

The search and resulting seizure of the operator's license and the Sears Roebuck payment book was legal. People v. Van Scoyk, 20 Ill2d 232, 235, 170 NE2d 151; People v. Brooks, 32 Ill2d 81, 203 NE2d 882.

■ Defendant argues that the reasonable grounds to perfect an arrest without a warrant were vitiated by a delay which he asserts exceeded a month. Defendant admitted that he did not surrender to the FBI until "somewhere between the 15th and 25th of September" and therefore the delay might have been as little as eighteen days. It is reasonable to assume that this surrender on a conspiracy charge substantiated Officer Novak's belief that defendant had committed an offense. Furthermore, Gene Barry had furnished the officer with several names of individuals whose identification cards were allegedly used by defendant. Time was needed to conduct investigations of the divergent and possibly unproductive information. A delay in effecting an arrest under these circumstances does not invalidate the procedure. People v. Derrico, 409 Ill 453, 100 NE2d 607 (four and one-half months delay).

Defendant also contends that he was not proven guilty of armed robbery beyond a reasonable doubt.

The evidence adduced by the People disclosed that on October 6, 1962, at about 8:30 a. m., defendant entered the grocery store of Otis George at 1324 South Kildare in Chicago. Shortly thereafter a second man [1]

---

[1] Codefendant Moore; indicted for armed robbery, tried with DeBerry, by the court, and acquitted.

entered the store with a double-barreled sawed-off shotgun and announced a hold up. Defendant brandished a revolver and proceeded to rob John Frieson, an employee of George, of a wallet containing $763, his driver's license and a payment book from Sears Roebuck bearing Frieson's name. Defendant also took proprietor George's wallet which contained five checks that he had cashed previously for customers. Defendant's cohort seized money from a customer and $25 from the cash register. Thereafter, two eyewitnesses, Otis George and John Frieson, positively identified the defendant. Both witnesses had ample opportunity to identify the defendant and both selected defendant from a police station lineup shortly after the crime. Furthermore, Frieson's driver's license and Sears payment book were recovered from defendant at the time of his arrest.

One of the five checks stolen from George was traced to defendant. Arthur Ball, a tavern owner, testified that on October 7, 1962, he cashed a check for defendant (People's Exhibit 1). The check was identified by George as one taken from his person by defendant. Ball testified that when he cashed the check defendant said that he owned a grocery store. Ball also testified that defendant had four or five checks at the time. Elihu Rice identified the check (People's Exhibit 1) as a check which George had cashed for him on October 5, 1962.

Charles Baraney, a cab driver, testified that in September, 1962, he gave defendant a double-barreled sawed-off shotgun in exchange for a gold watch. A similar weapon was used by defendant's accomplice during the robbery.

Defendant testified that on October 6, 1962, he lived with his family in Maywood, Illinois; that between 8:00 and 8:45 a. m. he was at a restaurant at 17th Avenue and Madison Street in Maywood talking with Mr.

329

Richard Topps; that he was picked up at the restaurant about 9:00 by the gentleman who usually drives him to the Golding Cleaners where defendant worked "the balance of the day." Defendant denied ever being at 1325 South Kildare Avenue; he denied ever knowing Otis George. Defendant testified that he acquired the Sears payment book and operator's license the day he was arrested. His explanation was:

> These two items were given to me earlier in the day [October 12, 1962], about 10:30 or 11:00 that morning. I had gone down to Hoyne and Madison Street where I barbered on the weekend, at a shop, at 2048 West Madison. That morning, I had occasion to cut a gentleman's hair whose name was Mr. F. G. Harper, I had had occasion to cut his hair a number of times. Later, I met Mr. Harper outside the shop and Mr. Harper asked me if I knew a Mr. John Frieson, who lives in Maywood. I answered that I knew him quite well. Mr. Harper told me that he had two pieces of Mr. Frieson's identification and asked me if I would return them to him. I told him that I would and he gave me the identification. I took the identification and I placed it inside a secretarial folder which I had in my wallet and closed the wallet. I had a slip of paper, which I put around the two pieces of identification, which were a driver's license and some type of credit card, and I placed it inside the folder and put that inside my pocket.

Defendant further testified that he did not know that the identification papers had been obtained in a robbery; that he had not seen the check (People's Exhibit 1) until he was in Municipal Court. Defendant testified that he had known Frieson "for a period of about a year"; that he had not seen him October 6, 1962, but that he saw him "soon after the robbery" at a card

330

game; that "Frieson came in and he had a bandage on his head"; that one of the players asked him what had happened and "he said he had been robbed by two fellows in the city." According to the testimony of the defendant, Frieson was asked who robbed him and "he said I don't know who they were, he said he never seen them before in his life." Defendant denied ever owning a revolver or a sawed-off shotgun and testified that he never "saw him [Moore] before in my life until . . . we were going to court together."

On rebuttal, Catherine Tenuta, a landlady, testified that defendant and a woman rented an apartment from her at 4010 West Jackson, Chicago, in September 1962, and that they moved out on October 27, 1962. She testified that she knew defendant as "Wiley." Officer Novak testified that when arrested, defendant did not mention that a man named Harper gave him Frieson's driver's license. Novak also testified that no barber shop was found at the address given by defendant. The officer testified that defendant said that the operator's license was given to him by a man named George and that the Sears payment book belonged to his parents but that he had written Frieson's name on it.

Defendant contends that he was not proved guilty of armed robbery beyond a reasonable doubt. Crucial to this argument is defendant's assertion that inconsistencies and contradictions in the several descriptions of defendant leads to the inescapable conclusion that defendant was not adequately identified.

Otis George and George Frieson, standing two to three feet from defendant during the armed robbery, had sufficient opportunity to identify defendant. Subsequently they selected defendant from a police station lineup and, finally, they identified defendant at the trial. There were some minor variations in their testimony concerning clothing and height; however, these are indications of a lack of recollection as to facts sur-

rounding the armed robbery and they do not sufficiently impair the identifications of the defendant. People v. Cobb, 52 Ill App2d 332, 337, 202 NE2d 56; People v. Robinson, 30 Ill2d 437, 440, 197 NE2d 45; People v. Oswald, 26 Ill2d 567, 570, 187 NE2d 685. We hold that defendant was sufficiently identified and that he was convicted beyond a reasonable doubt.

Defendant contends that the court committed prejudicial errors in the conduct of the trial, and that as a result he was deprived of a fair trial.

██ Defendant asserts that the court erred in admitting into evidence Officer Blasch's statement (he investigated the crime and conducted a lineup) that Mrs. Bradley (a customer in George's store) said that defendant DeBerry was in the store at the time of the robbery. We hold that the testimony constituted hearsay evidence and normally should not have been admitted. The error in admission was harmless because the identification was adequately established by other competent evidence; therefore, the officer's statement was merely cumulative. We hold that the error was not prejudicial and does not require reversal. People v. Hill, 60 Ill App2d 239, 208 NE2d 662.

Defendant also contends that the testimony of witness Charles Baraney was "irrelevant, immaterial, and highly prejudicial."

Charles Baraney testified:

> In the later part of August or in the early part of September, 1962, Mr. Timothy DeBerry was a passenger in my cab (pointing out the defendant DeBerry in the courtroom). At the time that Mr. DeBerry was a passenger in my cab, we had a conversation concerning this sawed-off shotgun, Mr. DeBerry wanted one and I told him I had just come into possession of one. As a result of this conversation, I traded Mr. DeBerry the gun for a watch.

332

On cross-examination he testified that he deposited defendant "at 4010 West Jackson Street" (defendant's fiancee Wiley resided at that address) ; that defendant "had been a passenger in my cab a couple of times before"; and that the shotgun "was in two pieces . . . approximately two feet long . . . wrapped in brown paper"; and that "I might recognize it if I saw it again."

 In People v. Galloway, 28 Ill2d 355, 192 NE 2d 370, defendant was convicted of the crime of unlawful possession of narcotic drugs. Defendant contended that references to money found in the apartment were improper because they tended to show defendant guilty of a crime (sale of narcotics) other than the crime for which he was being tried. The Supreme Court in affirming the conviction held, at 360:

> The test of admissibility of evidence is whether it fairly tends to prove the particular offense charged and any circumstances may be put in evidence which tend to make the proposition at issue either more or less probable. (People v. Allen, 17 Ill2d 55, 63.) Further, even if it be assumed the references to the money suggested to the jury the crime of selling narcotics, in a criminal case, where evidence is relevant and otherwise admissible, it is not to be excluded because it may also have a tendency to prejudice the accused. People v. Jackson, 22 Ill2d 382, 391.

Witnesses George and Frieson testified that DeBerry's cohort held a sawed-off shotgun, two feet in length, during the course of the October 6, 1962, robbery. We hold that the admission of the testimony concerning the weapon possessed by defendant prior to the robbery "fairly tends to prove the particular offense charged and . . . tend[s] to make the proposition at issue more or less probable."

Defendant contends that the court committed prejudicial error in overruling his objections to the testimony of rebuttal witness Catherine Tenuta.

Defendant testified that he had been living with his mother at 801 South 18th Avenue in Maywood "for about one year"; that "I was living at that address during the month of October," (1962); and that "In September, I lived at 4010 West Jackson, an apartment which my fiance and I had rented just that month." He further testified that "my fiancee's name is Elma Wiley. I was not known at that address as Timothy D. Wiley, I was known as Timothy DeBerry." On rebuttal Catherine Tenuta, the landlady at 4010 West Jackson, testified that defendant DeBerry "took my apartment on September 9th, 1962"; that he moved out October 27th, 1962 . . . with his wife"; and that she last saw defendant DeBerry "about two weeks before she moved out." Defendant interposed an objection which the court overruled and the witness testified that she knew defendant as "Wiley, that is the name he gave me." She testified that "each time he paid me (the rent) I gave a receipt."

Defendant asserts that the rebuttal evidence tends to show that he had an immoral relationship with a woman and that he used an alias.

The relationship between defendant and Elma Wiley was disclosed when defendant testified that Officer Novak had stopped him "in the company of my fiancee, who was riding in the automobile with me at that time." Defendant also testified that he lived with his parents at the time of the crime. Therefore, defendant established the basis for the rebuttal testimony; the prosecutor was not responsible for questions asked by defendant's attorney, nor for the responses to such questions by the People's witnesses. People v. Burage, 23 Ill2d 280, 283, 178 NE2d 389; People v. Hester, 49 Ill App2d 308, 311, 200 NE2d 3.

 Defendant had a jury trial but co-defendant Moore was being tried by the court without a jury at the same time. The trial court excluded the jury during the closing argument on behalf of Moore. Defendant contends that he had a "right to the benefits of the closing argument" made on behalf of Moore and that the jury's exclusion during this summation constituted reversible error. Defendant concedes that he interposed no objection at the trial; however, he asks us to take cognizance of this "plain error." [2] Defendant cites People v. Bradley, 30 Ill2d 597, 198 NE2d 809, as the authority for reversal on this point. In Bradley the Supreme Court reasoned that since the jury had heard the evidence against both defendants, it should have heard the *defense* of both defendants. In the instant case there was no severance until *after* both defense attorneys completed the presentation of evidence. We hold that the trial court did not abuse its discretion in severing the case at this juncture. Furthermore, though Bradley states that an appellate court may consider errors which were not properly preserved for review where the evidence is "closely balanced," in the instant case the evidence is not close. See also: People v. Fleming, 54 Ill App2d 457, 203 NE2d 716.

The conviction of defendant is affirmed.

Affirmed.

McCORMICK, P. J. and ENGLISH, J., concur.

---

[2] Ill Rev Stats c 38, § 121–9(a) (1963), provides that: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."