The People of the State of Illinois, Plaintiff-Appellee, *v.* Ike Taylor, Jr. (Impleaded), Defendant-Appellant.

(Nos. 59249, 59839 cons.;

First District (2nd Division)—December 24, 1974.

Patrick A. Tuite, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Frank J. Parkerson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant Ike Taylor and two codefendants were charged with three counts of aggravated battery and one count of the attempt murder of Albert Harris. Defendant Taylor and one codefendant, Ronald Lawson, chose to be tried by the court while their codefendant, Henry Hearan, took a simultaneous jury trial. After defendant Taylor and Lawson had rested their cases, but before Hearan had rested his case, the trial court acquitted Lawson of all charges, but found Taylor guilty of all charges. The jury continued to hear evidence and then found Hearan guilty of all charges. Defendant Taylor was sentenced to 10 to 20 years for attempt murder, 8 to 10 years on one of the aggravated battery charges, and 3 to 5 years on another of the aggravated battery charges, all sentences to run concurrently. Defendant Taylor separately appeals.

On appeal defendant contends that he was not proven guilty beyond a reasonable doubt as evidenced by the trial court's acquittal of his codefendant, Lawson; that the trial court erred in finding him guilty after he had rested, but before his codefendant, Hearan, had rested; that he was improperly sentenced on the aggravated battery charges; and that the sentences imposed were excessive.

Defendant's contentions that the inconsistent verdicts as to Lawson and himself evidence a reasonable doubt as to his guilt, and that the trial court erred in finding him guilty before codefendant Hearan had rested, necessitate a summary of the testimony adduced at trial and the order of that testimony.

Albert Harris testified that on the date he was attacked he was 16 years old, and at approximately 9 P.M., he left his home and began

walking to a friend's house. While less than one block from his home, he heard something click, turned, and saw defendant Taylor with a pistol in his hand. Taylor said, "It ain't nothing but a Gangster thing." [1] On hearing another sound, Harris turned to see another individual behind him in a doorway holding a shotgun. Harris turned back to Taylor and noticed that now Henry Hearan, holding a pistol, was on one side of Taylor and that Ronald Lawson, holding a shotgun, was on Taylor's other side. Taylor told Harris, "You're busted," [2] and then shot Harris in the throat from a distance of 10 to 15 feet. The individual in the doorway behind Harris then fired his shotgun, hitting Harris in the right side. A fifth individual then twice fired a 12-gauge shotgun at Harris, the second time hitting him in the face. As Harris was falling, he turned back to Taylor, Hearan, and Lawson, and saw fire coming from the guns of all three. As Harris was attempting to crawl away, a sixth individual emerged and fired a 12-gauge shotgun into him. Harris was finally able to drag himself under a car, and, as pellets continued to hit the car, to cry for his mother. Harris then heard his mother screaming, "Where are you?" and heard defendant Taylor say, "His mother is coming, let's get out of here." After his mother arrived, Harris told her, "Mama, get Ike, get Ike, Ike shot me, Ike shot me." Harris testified that he had known Ike Taylor for 3 or 4 years, that he had known Henry Hearan since sixth grade, but that he had only seen Ronald Lawson a few times in the last 2 years. Harris further testified that as a result of the shooting he was blinded, had difficulty talking, had lost six teeth, and had numerous scars on his body.

Clementine White, the mother of Albert Harris, also testified for the State. Shortly after Albert left home at 9 P.M., Mrs. White heard "a lot of guns going off." Upon going to her window, she heard a voice, which she recognized as that of her son, crying, "Help, help me, mama, help me." As Mrs. White raced out of her house, she saw Taylor and Hearan, with something short and black in their hands, standing next to where she later found her son lying. She heard Taylor say, "Let's go, here comes his mother." Although she saw other persons running away, she was not able to identify them. Although Mrs. White testified that after the shooting her son told her to get Taylor and Hearan, he never said to get Lawson. The State then rested.

Robert McGaha, a Chicago police officer, testified on behalf of Ronald Lawson. Two days following the shooting, he talked to Albert's mother

---

[1] Apparently, a reference to the Supreme Gangsters, a gang to which Taylor belonged and which Harris had earlier that year refused to join.

[2] Which Harris took to mean, he was about to die.

after being informed that Albert was unable to answer any questions. Mrs. White told Officer McGaha that her son had said Ike Taylor was one of the individuals who had shot him. Mrs. White also informed him that she had seen Ike Taylor and Henry Hearan running from the scene of the shooting. McGaha also testified that Mrs. White told him that her son stated that Ronald Lawson was involved in the shooting. However, this last reference to Ronald Lawson was not contained in his police report; indeed, Ronald Lawson was never even mentioned in that report. He further testified that, although he arrested Taylor and Hearan, he made no more than routine attempts to arrest Lawson and never informed any other police officers of his knowledge concerning Lawson. In fact, he did not know if Lawson was ever arrested in this case.

Rosie Mae Sweezer, Henry Hearan's mother, testified on his behalf. Hearan was at home with her from 2 P.M. on the afternoon of the shooting until 12:30 A.M. the next morning. Louise Hubbard, Henry's girlfriend, had arrived at the Hearan house at about 5 or 6 that evening. Henry, Louise, and the rest of the Hearan children played cards that evening. At 10:30, the whole family was watching a television show on Channel 32 with Sammy Davis Jr. and Louis Armstrong.

Annie Coleman, Henry's aunt, also testified on his behalf. She lived with the Hearan family and from about 2 P.M. until 10 P.M. on the day of the shooting, she and Henry were together most of the time. The longest time Henry was out of her sight that afternoon and evening was 5 or 10 minutes. Although she could remember that Henry was home that day, she could not remember where her husband was.

At this point, Hearan's counsel informed the court that two additional important witnesses in Hearan's defense were presently unavailable and asked for a continuance in order to present their testimony to the jury. Although the State called such a request dilatory and unwarranted, defendant Taylor's counsel, who was present, neither made any objection to nor joined in the motion for a continuance, but instead remained silent. The court then granted a 2-day continuance and released the jury, directing them however to return in 2 days to hear the balance of Hearan's case. The court then informed counsel that it would proceed with the bench trials of Taylor and Lawson. Again, Taylor's counsel raised no objection.

Clinton Lee was then called as a witness on behalf of defendant Ike Taylor. Mr. Lee was the bartender at the VanKeeler Lounge on the day of the shooting and stated that Taylor was at the bar from approximately 6:45 P.M. until 11:30 P.M. Although Mr. Lee had a vivid recollection of that night and recalled that only two people were sitting at

the bar that night, he could not remember the name of the regular patron that was there with Taylor. Defendant Taylor then rested his case.

Thomas Murphy, a Chicago police officer, testified on behalf of Ronald Lawson. Officer Murphy talked to Albert Harris at the hospital the night of the shooting. Although the victim's language was hardly understandable, he testified that Harris told him that Taylor and Lawson were involved in the shooting. However, Officer Murphy admitted that his police report did not state that Lawson was involved, but merely that Lawson had been there at the scene. Moreover, Officer Murphy testified that to his knowledge there were no police reports indicating that an individual named Lawson was being sought for the shooting.

Ronald Lawson testified in his own behalf. He denied being involved in the shooting, being present at the shooting, or knowing who was involved in the shooting. Moreover, he was never arrested in this case, but voluntarily appeared in court in response to a letter from the State's Attorney's office. Lawson then rested his case.

After the State offered nothing in rebuttal, the court heard closing arguments for the State, Taylor, and Lawson. Without any objection by either defendant, the court then made its findings: Lawson was acquitted; Taylor was found guilty as charged.

Two days later, the court reconvened, with the jury, to hear the remaining witnesses for Hearan.

Willie Lloyd, a cab driver, testified for Hearan. He was in the area of the shooting that night and saw one person being chased and shot at by another person. Although Mr. Lloyd positively stated that the person who was doing the shooting was not Henry Hearan, he could not say that Albert Harris was the person he saw shot at, although he knew Harris. He did not see any one else with a gun that night.

Louise Hubbard also testified for Hearan. She arrived at Hearan's house around 6 P.M. and stayed until approximately 1 A.M. She played cards with Henry, Henry's mother, and others. She and Henry also watched a television show of Sammy Davis, Count Basie, and Eartha Kitt. During the entire evening, Henry was never out of her sight more than 10 or 15 minutes.

Henry Hearan testified in his own behalf. He denied any participation in the shooting of Albert Harris. He was at home the night of the shooting with his family and Louise Hubbard. He played cards that night, but Louise Hubbard was wrong if she testified that his mother played cards with them. He also watched the same television show that was testified to earlier.

In rebuttal, Manuel Fingerhut, the controller for Channel 32 television, testified for the State. The night of the shooting, his station did not air

any program containing Sammy Davis, Jr., Eartha Kitt, or Count Basie. He further testified that he checked the T.V. Guide for the night of the shooting and it disclosed no television shows involving Sammy Davis, Jr., scheduled for that evening anywhere in the Chicago area.

■■ Defendant first contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt because the trial judge found his codefendant, Lawson, not guilty. The defendant's argument is premised on the assumption that the evidence against both defendants was identical in all respects. For it is well settled that when one defendant is found guilty and a codefendant found not guilty on evidence identical in all respects as to both defendants, the guilty finding will not be allowed to stand. (*People v. Griffin*, 88 Ill.App.2d 28, 232 N.E.2d 216.) However, it is equally well settled that when there is the slightest difference in the evidence as between two persons jointly tried, the trier of fact may weigh the evidence and make allowance for such difference. (*People v. Jones*, 132 Ill.App.2d 623, 270 N.E.2d 288.) If there is any difference in the evidence, the mere fact that one defendant was convicted and one defendant acquitted does not raise a reasonable doubt as to the guilt of the convicted defendant. In such cases the acquittal of one defendant is not a ground for reversal of the conviction of the other. See *People v. Stock*, 56 Ill.2d 461, 309 N.E.2d 19.

In arguing that the evidence was identical in all respects, defendant Taylor emphasizes the identification testimony of the victim, Albert Harris.[3] However, such a characterization overlooks both the circumstances under which Harris viewed the two defendants and the statements made by Harris after the shooting. Moreover, such a characterization completely ignores the testimony of Clementine White, Harris' mother.

■■ Harris had a much better opportunity to view and identify defendant Taylor than codefendant Lawson. Harris had known Taylor for several years, but had only seen Lawson a couple of times in the last 2 years. Taylor was also the first assailant Harris saw. Moreover, Taylor was alone when he first confronted Harris. Lawson appeared only later, and then only as one of a group of three assailants. More importantly, Taylor was the only assailant to speak to Harris. Taylor not only informed Harris that this was a "Gangster" thing, but he warned Harris

---

[3] In this regard, defendant suggests that the only reason Lawson was acquitted was because the trial judge apparently considered the absence in the police reports of any accusations against Lawson. However, the trial judge was merely exercising his right and duty to weigh the credibility of the witnesses. (*People v. Arroyo*, 18 Ill.App.3d 187, 309 N.E.2d 804.) Moreover, as set out below, this was not the only difference in the evidence against defendant and Lawson.

that he was "busted." Finally, Taylor was the first assailant to fire at Harris. This substantial difference in the victim's opportunity to view and identify the two defendants provided the trial judge with a reasonable basis on which to differentiate between the two defendants. *People v. Hill,* 14 Ill.App.3d 368, 373, 302 N.E.2d 403.

■■■ However, Harris' greater opportunity to identify Taylor is not the only difference in the evidence presented against Taylor and Lawson. Immediately after the shooting, Harris told his mother to "get Ike, Ike shot me." At this crucial moment, when the attack was fresh in Harris' mind, he accused Taylor, not Lawson. This selective accusation against Taylor but not Lawson was corroborated by Mrs. White.[4] An accusation immediately after the crime against one defendant, but not another, is a sufficient difference in the evidence to convict one defendant, but not the second. (*People v. Fort,* 133 Ill.App.2d 473, 479, 273 N.E.2d 439.) This difference is present in the case at bar.

■■■ The final difference in the evidence presented against Lawson and Taylor was the testimony of Mrs. White. After hearing gun shots and her son's cries for help, Mrs. White raced down to the street. When she arrived she heard Taylor say, "Let's go, here comes his mother." Mrs. White was also able to observe Taylor standing near the scene of the shooting with something short and black in his hands. While Mrs. White was thus able to independently place Taylor at the scene of the crime, she was not able to do so in regard to Lawson. Independent testimony establishing the presence of one defendant at the scene of a crime but not the presence of a codefendant is again sufficient evidence to convict one defendant, but not the other. (*People v. Dixon,* 18 Ill.App.3d 470, 472, 309 N.E.2d 605.) In the instant case, defendant Taylor was seen and heard at the scene of the shooting by Mrs. White; Lawson was not.

For the foregoing reasons we find that there was a sufficient difference in the evidence presented for the trial court to find defendant Taylor guilty beyond a reasonable doubt. The acquittal of codefendant Lawson does not vitiate that result.

Defendant next argues that the trial court erred in finding him guilty after he had rested his case but before codefendant Hearan had rested his case. Defendant contends that the additional witnesses called by Hearan to controvert Hearan's identification by Harris might possibly have cast doubt on his own identification by Harris. If, because of the additional alibi witnesses, the trial judge could have found Harris mis-

---

[4] While there is some testimony by two police officers that Harris also implicated Lawson, neither officer included that information in his official report. We agree with the trial judge that such police conduct is rather peculiar and note the difference with the uncontradicted accusations against Taylor.

taken as to his identification of Hearan, he could also have found Harris mistaken as to his identification of defendant. However, such an argument is not supported by the record.

Defendant Taylor and his two codefendants were jointly tried, Hearan by a jury, and Taylor and Lawson, who had waived their right to a jury trial, by the court. After Hearan had presented two witnesses in his defense, Hearan's counsel informed the court that two important defense witnesses were presently unavailable, and asked the court for a 2-day continuance in order to bring them to court. Although the State objected to such a request, Taylor's counsel neither objected to the continuance, nor joined in the request for the continuance. While in the process of granting the continuance, the court indicated that it would proceed with the cases of Taylor and Lawson. Again, Taylor's counsel remained silent.

After a short recess, the court inquired whether Taylor's counsel was ready to proceed and call his witnesses. Counsel answered ready and then called Clinton Lee. After Lawson also had presented his witnesses, both sides rested and final arguments were made by all parties. After hearing final arguments, the court entered a finding of guilty as to Taylor and not guilty as to Lawson. At no time did Taylor's counsel object or raise any question as to the propriety of the court's procedure. Two days later, after Hearan had presented his final witnesses, the jury found Hearan also guilty.

Defendant Taylor now claims that he was somehow prejudiced by the court's procedure. He argues that Hearan's additional witnesses, although they failed to persuade the *jury* that Harris was mistaken in his identification of Hearan, may have persuaded the *trial judge* that Harris was mistaken in his identification of both Hearan and Taylor. However, such speculation is not supported by the record. It can not be denied that, despite the additional witnesses, the jury found Hearan guilty. Moreover, on oral argument, Taylor's counsel conceded that the additional witnesses were substantially impeached. How Taylor could have benefited, had the trial judge considered the testimony of Hearan's witnesses, has not and can not be explained. In the instant case, defendant Taylor was positively identified by Albert Harris. Mrs. White's testimony not only independently placed Taylor at the scene of the shooting but corroborated her son's testimony in many important respects. Thus, the admittedly unconvincing testimony by Hearan's witnesses could not possibly have altered the trial court's finding of guilty.

Defendant relies primarily on *People v. Bradley*, 30 Ill.2d 597, 198 N.E.2d 809. However such reliance is misplaced. In *Bradley*, two codefendants were jointly tried, Bradley by a jury and Smith by the court. There, the jury heard the State's evidence against both Bradley and

Smith. However, after Bradley had closed his case, the court severed the two cases and thus, the jury never did hear the defense presented by Smith. Although the court found Smith not guilty, the jury, not having heard Smith's defense, found Bradley guilty. On appeal, Bradley argued that the cases were improperly severed, and that, as a result of that severance, the jury did not hear the apparently crucial defense evidence that resulted in Smith's acquittal. The reviewing court agreed, and reversed and remanded while stating:

> "We can not say what would have been the verdict of the jury if they had been permitted to hear the evidence that satisfied the trial judge that [the complainant's] identification of Smith * * * was erroneous." (30 Ill.2d at 601.)

However, such a conclusion would be totally unwarranted in the instant case. In *Bradley* the evidence that was not presented to the jury resulted in the court's acquittal of Smith; in the present case, the evidence not presented to the jury until after the court's finding of guilt as to Taylor did not alter the result, but similarly resulted in a finding of guilty as to Hearan. In *Bradley* the State's case depended on the identification testimony of a single witness so that the State's entire case depended on the credibility of one witness; in the case at bar, the State presented the corroborating testimony of Mrs. White. Additionally, in *Bradley*, the complainant's identification of Bradley was weak, suspect, and at one time inconsistent; no such frailties appear with the instant identification. Most importantly, the reviewing court in *Bradley* did not know what evidence Smith had presented to gain an acquittal; rather the court had to infer that, whatever it was, it was crucial since the State's case was the same as to both defendants. However, no such speculation is required in the instant case. The evidence presented by Hearan after the defendant was found guilty is contained in the present record. It is conceded by all parties to be unconvincing and, in fact, did not change the jury verdict. Defendant can not successfully rely on a case so factually dissimilar.

■■ We therefore conclude that because the evidence not considered by the trial court was admittedly unconvincing and because it has not been shown to be sufficient to result in a finding of not guilty, there was no error in the procedure followed by the trial court.

■■■ Moreover, defendant's objection has come too late. During the entire procedure in the court below, defendant's counsel never raised any objection to the court's conduct. Although the State objected to the continuance granted Hearan, defendant Taylor did not. Neither having objected to the continuance, nor having joined in the request for a continuance, he can not now complain. (*People v. Armstead*, 28 Ill.2d 252;

190 N.E.2d 778.) By remaining silent defendant failed to provide the trial court with an opportunity to pass on and correct the alleged error. It is axiomatic that a defendant may not sit idly by and allow alleged irregular proceedings to occur without objection, and afterward seek to reverse his conviction by reason of those same irregularities. (*People v. Mays*, 23 Ill.2d 520, 179 N.E.2d 654.) Moreover, in the instant case, defendant can be viewed as having invited the error complained of. When asked by the trial court if he was ready to proceed after Hearan was granted a continuance, he responded affirmatively. Thereafter, he made his final argument. By standing mute after presenting his evidence and argument, he invited the court to issue its findings. It is settled that such acquiescence constitutes a waiver of any alleged error. (*People v. Jennings*, 84 Ill.App.2d 33, 228 N.E.2d 566.) Although the court in *Bradley*, *supra*, found the same error as alleged here to be plain error, that finding was premised on the fact that the evidence in *Bradley* was closely balanced. As set out above, the evidence in the instant case is not nearly so close. (See *People v. Killebrew*, 55 Ill.2d 337, 342, 303 N.E.2d 377; *People v. DeBerry*, 62 Ill.App.2d 323, 335, 211 N.E.2d 26.) Defendant Taylor never once objected at trial to the court's procedure. Since defendant persistently failed to bring this alleged error to the attention of the trial court, he can not do so now on appeal. *People v. Virgin*, 9 Ill. App.3d 902, 293 N.E.2d 349; *People v. Lampson*, 6 Ill.App.3d 1099, 286 N.E.2d 358.

■■ Defendant next argues that he was improperly convicted and sentenced on the charges of aggravated battery since they arose out of the same course of conduct as that which resulted in the attempt murder charge. Defendant was convicted of three counts of aggravated battery and one count of attempt murder and sentenced on two counts of aggravated battery and one count of attempt murder. The State concedes that the counts of aggravated battery arose out of the same course of conduct as the attempt murder charge, and thus, the convictions and sentences on aggravated battery were improper. (*People v. Lilly*, 56 Ill. 2d 493, 309 N.E.2d 1.) We agree. Under these circumstances there can be but one conviction, that for attempt murder. (*People v. Powell*, 21 Ill.App.3d 423, 315 N.E.2d 627.) Accordingly, the convictions for aggravated battery are reversed and the sentences thereon vacated.

Defendant's final argument is that the 10 to 20 year sentence for attempt murder is excessive. Attempt murder is a Class I felony. (Ill. Rev. Stat. 1973, ch. 38, par. 8—4.) Under the Unified Code of Corrections, the minimum term for a Class 1 felony shall be 4 years "unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum

term." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2).) Defendant challenges the sentence on two grounds.

■■■ First, defendant argues that a minimum greater than 4 years was impermissible because the trial judge imposed the greater minimum only because he felt sorry for the victim and not because he had a regard for the nature and circumstances of the offense or the history and character of the defendant. To support his argument, defendant points to this statement by the trial judge:

> "As far as this cause is concerned, Mr. Taylor and the other fellows went out and tried to assassinate one of his playmates, a boy he went to school with, why is beyond my comprehension. Maybe it has to do with the war, but why they did it, it is beyond me. Here is a boy who was injured, namely, Mr. Albert Harris. The poor boy who lives on the West side, comes from a poor family, will walk around for as long as he lives probably with a white cane, with all of the injuries he sustained as a result of this senseless shooting. I do not understand it, I never will."

While that statement indicates the trial judge's compassion for the plight of Albert Harris, it also clearly indicates that the trial judge did consider the nature and circumstances of the offense. Indeed, it is clear from a reading of the trial judge's comments that it is only because of the senseless and brutal nature of the ambush that a minimum greater than 4 years was imposed. It is also clear that the trial court considered the history and character of the defendant. There was a hearing in aggravation and mitigation during which the defendant presented two witnesses. Additionally, the court had before it a presentence investigation report. In fact, the trial judge said that because of the favorable testimony in mitigation, he was providing a large spread in the sentence in order to encourage defendant's rehabilitation. Taking the record as a whole, there was no violation of the dictates of the Unified Code of Corrections.

■■ In this regard, defendant also argues that there must be some positive showing such as the trial judge specifically stating that, in imposing a minimum greater than that required, the trial judge did consider the nature and circumstances of the offense and the history and character of the defendant. Defendant relies on *People v. Matychowiak*, 18 Ill.App.3d 739, 310 N.E.2d 394. However, in *Matychowiak*, the defendant was sentenced pursuant to a plea of guilty. There was no hearing in aggravation and mitigation, no presentence report, and no detailed testimony concerning the crime. Consequently, the record foreclosed any consideration of the required sentencing factors. In the instant case, there was more than sufficient information in the record on the basis of which

the trial judge could have properly imposed a greater minimum than that required. After a thorough review of the record, we conclude that although the trial judge did not specifically state that he was considering the circumstances of the offense and the history of the defendant, it is apparent that he did so. We hold that there is no requirement that the trial judge make any specific statement as to the factors considered, but instead, each case must be determined on its own facts after a review of the record and proceedings involved. See *People v. Scott*, 20 Ill.App. 3d 880, 314 N.E.2d 671.

■■ Defendant's second ground for challenging the sentence is that a 10-year minimum for attempt murder was excessive in light of defendant's age and the fact that he had no prior criminal record. However, the minimum imposed was allowable under the Code. The record discloses a vicious attempted assassination. In view of the senseless and brutal nature of the attack and the severe injuries suffered by the victim, we decline to disturb the sentence imposed by the trial court.

Therefore, the convictions for aggravated battery are reversed and the sentences thereon vacated; the conviction and sentence for attempt murder are affirmed.

Judgment affirmed in part; judgment reversed and vacated in part.

HAYES, P. J., and DOWNING, J., concur.