THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SENTELL PORTERFIELD, Defendant-Appellant.

First District (3rd Division)　No. 76-892

Opinion filed September 28, 1977.

James J. Doherty, Public Defender, of Chicago (Dennis E. Urban and Richard D. Kharas, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Renee Goldfarb, and Randolph Kemmer, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:
The defendant, Sentell Porterfield, and his codefendant Ricky Harris, were charged with burglary and tried jointly in a bench trial. While Harris was found not guilty of the charge, Porterfield was convicted and sentenced to a term of 1 to 3 years in the penitentiary. Porterfield now

appeals that conviction on the ground that he was not proven guilty beyond a reasonable doubt.

The charges brought against Porterfield stemmed from his alleged participation in a burglary of the B&R Soul City Record Store at 3615 South State Street in Chicago, on the evening of April 27, 1975. The prosecution of this case consisted primarily of the testimony of two witnesses: Lendell Webb and Robert Gardner. Webb testified that at approximately 5:30 p.m. on Sunday, April 27, 1975, he was directly across the street from the B&R Soul City Record Store. At the time of the occurrence Webb was 15 and was an employee at the store. The evidence shows that the store was not open on that date, and Bernadette Crenschew and Robert Richardson, the owners of Soul City Records, both stated that the store had been closed that day, and no one had been given permission or authority to enter. Webb testified that while located across the street from the store, he noticed that the front gate of the store had been pulled back and that there were a number of individuals inside, including Porterfield and Harris.

Webb further testified that he saw Porterfield and Harris leave the store, along with a group of 5 or 6 other people; at the time Harris was allegedly carrying some record albums while Porterfield had some records as well as a vacuum cleaner in his arms. Webb asserted that he recognized Porterfield and Harris because he had previously seen each of them in the record store on other occasions but that at the time of the burglary he did not know Porterfield's name and that he only knew Harris' nickname.

Webb testified that upon leaving the store, Porterfield went into a tavern which was situated about five stores down the street from Soul City Records while Harris entered a different tavern located directly across the street from the record store. Porterfield stayed only a short time at the tavern and, after he left, Webb immediately went inside and called the police.

The police arrived shortly before 6 p.m. For a reason which is not entirely clear, the police did not at first realize that Webb was an eyewitness to the burglary. Webb testified that when the police arrived at the store, they told him to get away. Webb thereafter stood on the opposite side of the street until Bernadette Crenschew came to the store; he then waited with Crenschew until Robert Gardner arrived sometime after 8 p.m.

Gardner, the State's other witness, testified that between the hours of 8 and 9 p.m., on April 27, he was in the vicinity of 36th and State Streets when he noticed Porterfield leave a tavern located on the same block as Soul City Records. He stated that at the time, Porterfield was carrying some record albums. He observed Porterfield walk to the rear of the

tavern and put the records in a garbage can located there and, after Porterfield returned to the front of the tavern, Gardner retrieved the records and immediately went to the record store.

The police were again called and, upon arriving at the store, they were given the records which had been recovered by Gardner. Both Webb and Gardner then accompanied the officers outside the store where they saw Porterfield and pointed him out to the police. Porterfield was then stopped on the street by the officers and was immediately arrested.

Later that evening, at the police station to which Porterfield had been taken, Webb identified Harris as another of the participants in the burglary. It is not clear from the record why Harris was at the station when Webb identified him; Webb simply testified that upon his arrival at the station, he recognized Harris and pointed him out to the police as one of the participants. At the police station, Crenschew also identified the records as belonging to her because they had a "B&R" price sticker still attached to them.

At the trial, both Porterfield and Harris presented alibi witnesses. Harris' mother testified that he was at home until 6 p.m., while Porterfield's wife testified that Porterfield was at home until after 6 p.m. In addition, Dorothy Sims testified that she observed the burglary from a 10th floor apartment of a building located about a block away from the record store and that she did not see either Harris or Porterfield participating in the crime. She also stated that at the same time she was watching the activity in the record store she was also watching an ambulance which had pulled in front of the building in which she lived and therefore her attention was divided between the ambulance and the record shop.

At the close of the evidence, the trial judge acquitted Harris but convicted Porterfield of the crime of burglary. In finding Harris not guilty, the trial judge made the following observation:

> "There was quite a bit of inconsistency in the testimony of Lendell Webb and whether or not Ricky Harris is guilty or not guilty, must rest upon the testimony of Lendell Webb. And Lendell Webb gets—I mean Ricky Harris gets the benefit of the doubt. He is found not guilty."

As to Porterfield, the judge again recognized that Webb had been impeached "to some extent about certain things." However, because he felt that Gardner's testimony had provided corroborative evidence, the judge believed that the State had met their burden of proof with respect to Porterfield.

Porterfield's claim on appeal that he was not proven guilty beyond a reasonable doubt is based upon the argument that Webb's testimony is unbelievable. He first asserts that Webb's credibility as a witness has been

undermined by certain discrepancies in his testimony. Since Webb provided the only direct evidence of Porterfield's participation in the burglary, Porterfield asserts that the impeachment of Webb leaves insufficient credible evidence upon which to find him guilty beyond a reasonable doubt. Porterfield also points to the fact that the trial judge relied upon the inconsistencies in Webb's testimony in finding Harris not guilty; however, Porterfield reasons that since the evidence upon which he was convicted is identical to the evidence upon which Harris was acquitted, his conviction must fail.

■■■ It is true that when two defendants are jointly tried and one is convicted while the other is acquitted on evidence which, as to both defendants, is identical in all respects, a reasonable doubt exists as to the guilt of the convicted defendant. (*People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19. See also *People v. Taylor* (1974), 25 Ill. App. 3d 396, 323 N.E.2d 388; *People v. Smith* (1974), 25 Ill. App. 3d 155, 323 N.E.2d 100.) At the same time, where there exists even the slightest difference in the evidence as between two persons jointly tried, the trier of fact may weigh the evidence and make allowance for such a difference. (*People v. Taylor*.) In the present case, we do not agree with Porterfield's contention that the evidence offered against him was identical to the evidence offered against Harris. Where, as to Harris, there existed only Webb's testimony, Gardner provided additional corroborating evidence with respect to Porterfield's participation in the burglary. The trial judge was entitled to consider this difference in evidence. This additional testimony meant that the trial judge had a greater amount of evidence to consider in adjudicating the charges brought against Porterfield.

The defendant's reliance upon *People v. Ethridge* (1971), 131 Ill. App. 2d 351, 268 N.E.2d 260, is misplaced. In that case Charles Ethridge had been convicted of burglary while a codefendant was found not guilty of the same charge. The only evidence offered against both defendants was the same eyewitness testimony of two police officers. In reversing Ethridge's conviction the appellate court felt that if the trial court disbelieved the testimony of the officers with respect to one defendant, then such testimony would have to be unbelievable with respect to the other defendant. In the present case, as explained above, the evidence offered against Porterfield differed from the evidence against Harris.

We also feel that, considering the evidence as a whole, Porterfield was proven guilty beyond a reasonable doubt. It is axiomatic that the findings of the trier of fact will not be disturbed through the substitution of the reviewing court's own conclusions unless the proof is so unsatisfactory as to justify a reasonable doubt as to the defendant's guilt. (*People v. Springfield* (1975), 34 Ill. App. 3d 48, 339 N.E.2d 334.) It is incumbent upon the trier of fact to determine the credibility of the witnesses, the

weight to be accorded their testimony and the inferences which may be drawn therefrom, since it observed the witnesses testifying. (*People v. Pride,* (1959), 16 Ill. 2d 82, 156 N.E.2d 551.) These conclusions will not be overturned unless they are palpably erroneous. *People v. Arndt* (1972), 50 Ill. 2d 390, 280 N.E.2d 230.

■■ As the defendant notes, if Webb is determined to be incredible, there exists no direct evidence of Porterfield's guilt and Porterfield's conviction must fall. However, we do not interpret the trial judge's comments relating to the inconsistencies in Webb's testimony as indicating that he considered Webb to be incredible; rather, we feel that he treated those inconsistencies as only affecting the weight of the evidence. We also do not believe that the discrepancies urged by the defendant on appeal are so significant that we should substitute our judgment for the judgment of the trial court.

■■ First of all, two of the four alleged discrepancies are purely conjectural in nature. For example, Porterfield asserts that Webb is discredited by the fact that he failed to inform the police that he was an eyewitness to the burglary when the police first arrived at the store. However, the fact that the police failed to immediately interview Webb as an eyewitness when they first arrived at the store does not necessarily indicate that Webb's story was contrived; an equally plausible explanation would seem to be that the police, treating Webb as a mere youthful spectator, ordered him to get away, and Webb simply complied. Porterfield also claims that Webb should not be believed because he stood outside in the rain from the time he first observed that the store was being burglarized until the owner finally arrived—a period of about an hour and a half. We do not feel that such behavior on the part of a 15-year-old boy is necessarily indicative of the fact that he is, in some sense, stupid, particularly where the store which was burglarized was one where the boy was an employee. We think that his interest in the proceedings could easily explain Webb's willingness to stand in the rain for that length of time.

Porterfield also points to two discrepancies between Webb's statements at the pretrial hearing and his statements at trial which serve to impeach his credibility. First, as the pretrial hearing, Webb stated that Porterfield was carrying 11 record albums when he was arrested, while at trial Webb claimed that Porterfield had nothing in his hands at that time. Secondly, at trial, Webb testified that the other unidentified participants in the burglary were older than both Porterfield and Harris, one being about 27 and another about 39. During the pretrial hearing, Webb stated that the other individuals were all about 17 years of age. Porterfield further suggests that this discrepancy in Webb's estimation of the ages of the other participants also indicates a discrepancy in Webb's testimony as to

Porterfield's age. Porterfield argues that, both at the preliminary hearing and during cross-examination at trial, Webb stated that the other participants were older than both Harris and Porterfield. At trial, it was stipulated that Porterfield was 40 years old while Harris was 20. Porterfield now reasons that, in stating during the preliminary hearing that the other participants were 17 years of age and older than Porterfield, Webb was grossly underestimating Porterfield's age.

■■ We do not find in the record, however, any indication that at the preliminary hearing, Webb stated that the other participants were older than Porterfield. The colloquy upon which the defendant relies in support of that assertion is as follows:

"Q. [By Defense Counsel] Approximately what age were these other people, were they young people or older people?

A. Older.

Q. Approximately how old were these other people?

A. Approximately seventeen."

A careful reading of this passage demonstrates that it is not necessarily true that in stating that the other participants were "older," Webb was comparing their ages with those of Harris and Porterfield. Therefore, we cannot consider Webb's alleged inconsistency as to Porterfield's age as discrediting his testimony.

■■ While the other inconsistencies do reflect adversely upon Webb's credibility, we feel they are minor in nature and as such do not, as a matter of law, destroy the credibility of a witness. Such discrepancies are only matters to be taken into consideration by the trier of fact in determining the weight to be assigned to the testimony. *People v. Ramirez* (1970), 124 Ill. App. 2d 407, 260 N.E.2d 435.

Considering the nature of the alleged inconsistencies in Webb's testimony along with the corroborating testimony of Gardner, we do not believe that there exists a reasonable doubt as to Porterfield's guilt. Accordingly, we affirm the judgment of the Circuit Court of Cook County.

Judgment affirmed.

McNAMARA and JIGANTI, JJ., concur.